(Slip Opinion) OCTOBER TERM, 2017 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## CHINA AGRITECH, INC. *v.* RESH ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 17–432. Argued March 26, 2018—Decided June 11, 2018

*American Pipe & Constr. Co.* v. *Utah*, 414 U. S. 538, established that the timely filing of a class action tolls the applicable statute of limitations for all persons encompassed by the class complaint and that members of a class that fails to gain certification can timely intervene as individual plaintiffs in the still-pending action, shorn of its class character. *American Pipe*'s tolling rule also applies to putative class members who, after denial of class certification, "prefer to bring an individual suit rather than intervene." *Crown, Cork & Seal Co.* v. *Parker*, 462 U. S. 345, 350. The question presented in this case is whether *American Pipe* tolling applies not only to individual claims, but to successive class actions as well.

This suit is the third class action brought on behalf of purchasers of petitioner China Agritech's common stock, alleging materially identical violations of the Securities Exchange Act of 1934. The Act has both a two-year statute of limitations and a five-year statute of repose, 28 U. S. C. §1658(b). Here, the accrual date for purposes of the Act's limitation period is February 3, 2011, and for the repose period, November 12, 2009. Theodore Dean, a China Agritech shareholder, filed the first class-action complaint on February 11, 2011. As required by the Private Securities Litigation Reform Act of 1995 (PSLRA), his counsel posted notice of the action and invited any member of the purported class to move to serve as lead plaintiff. Six shareholders sought lead-plaintiff status. On May 3, 2012, the District Court denied class certification; the action settled in September 2012, and the suit was dismissed. On October 4, Dean's counsel filed a new complaint (*Smyth*), still timely, with a new set of plaintiffs. Eight shareholders sought lead-plaintiff appointment in response to the PSLRA notice, but the District Court again denied class certifica-

tion. Thereafter, the *Smyth* plaintiffs settled their individual claims and dismissed their suit.

Respondent Michael Resh, who did not seek lead-plaintiff status in the earlier actions, filed the present class action in 2014, a year and a half after the statute of limitations expired. The other respondents moved to intervene in the suit commenced by Resh, seeking lead-plaintiff status. The District Court dismissed the class complaint as untimely, holding that the *Dean* and *Smyth* actions did not toll the time to initiate class claims. The Ninth Circuit reversed, holding that the reasoning of *American Pipe* extends to successive class claims.

*Held*: Upon denial of class certification, a putative class member may not, in lieu of promptly joining an existing suit or promptly filing an individual action, commence a class action anew beyond the time allowed by the applicable statute of limitations. Pp. 5–15.

(a) *American Pipe* and *Crown, Cork* addressed only putative class members who wish to sue individually after a class-certification denial. The "efficiency and economy of litigation" that support tolling of individual claims, *American Pipe*, 414 U. S., at 553, do not support maintenance of untimely successive class actions such as the one brought by Resh. Economy of litigation favors delaying individual claims until after a class-certification denial. With class claims, on the other hand, efficiency favors early assertion of competing class representative claims. If class treatment is appropriate, and all would-be representatives have come forward, the district court can select the best plaintiff with knowledge of the full array of potential class representatives and class counsel. And if the class mechanism is not a viable option, the decision denying certification will be made at the outset of the case, litigated once for all would-be class representatives.

Federal Rule of Procedure 23 evinces a preference for preclusion of untimely successive class actions by instructing that class certification should be resolved early on. The PSLRA, which governs this litigation, evinces a similar preference, this time embodied in legislation providing for early notice and lead-plaintiff procedures. There is little reason to allow plaintiffs who passed up opportunities to participate in the first (and second) round of class litigation to enter the fray several years after class proceedings first commenced.

Class representatives who commence suit after expiration of the limitation period are unlikely to qualify as diligent in asserting claims and pursuing relief. See, *e.g., McQuiggin* v. *Perkins*, 569 U. S. 383, 391. And respondents' proposed reading would allow extension of the statute of limitations time and again; as each class is denied certification, a new named plaintiff could file a class complaint that

Syllabus

resuscitates the litigation. Endless tolling of a statute of limitations is not a result envisioned by *American Pipe*. Pp. 5–11.

(b) If Resh's suit meets the requirements of Rule 23(a) and (b), respondents assert, the suit should be permitted to proceed as a class action in keeping with *Shady Grove Orthopedic Associates, P. A.* v. *Allstate Ins. Co.*, 559 U. S. 393. *Shady Grove*, however, addressed a case in which a Rule 23 class action could have been maintained absent a state law proscribing class actions, while Resh's class action would be untimely unless saved by *American Pipe*'s tolling exception. Rule 23 itself does not address timeliness of claims or tolling and nothing in the Rule calls for the revival of class claims if individual claims are tolled.

The clarification of *American Pipe*'s reach does not run afoul of the Rules Enabling Act by abridging or modifying a substantive right. Plaintiffs have no substantive right to bring claims outside the statute of limitations. Nor is the clarification likely to cause a substantial increase in the number of protective class-action filings. Several Courts of Appeals have already declined to read *American Pipe* to permit a successive class action filed outside the limitations period, and there is no showing that these Circuits have experienced a disproportionate number of duplicative, protective class-action filings. Multiple filings, moreover, could aid a district court in determining, early on, whether class treatment is warranted, and if so, who would be the best representative. The Federal Rules provide a range of mechanisms to aid district courts in overseeing complex litigation, but they offer no reason to permit plaintiffs to exhume failed class actions by filing new, untimely class claims. Pp. 11–15.

857 F. 3d 994, reversed and remanded.

GINSBURG, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KENNEDY, THOMAS, BREYER, ALITO, KAGAN, and GORSUCH, JJ., joined. SOTOMAYOR, J., filed an opinion concurring in the judgment.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES
_____

No. 17–432
_____

## CHINA AGRITECH, INC., PETITIONER *v.* MICHAEL H. RESH, ET AL.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[June 11, 2018]

JUSTICE GINSBURG delivered the opinion of the Court.

This case concerns the tolling rule first stated in *American Pipe & Constr. Co.* v. *Utah*, 414 U. S. 538 (1974). The Court held in *American Pipe* that the timely filing of a class action tolls the applicable statute of limitations for all persons encompassed by the class complaint. Where class-action status has been denied, the Court further ruled, members of the failed class could timely intervene as individual plaintiffs in the still-pending action, shorn of its class character. See *id.,* at 544, 552–553. Later, in *Crown, Cork & Seal Co.* v. *Parker*, 462 U. S. 345 (1983), the Court clarified *American Pipe*'s tolling rule: The rule is not dependent on intervening in or joining an existing suit; it applies as well to putative class members who, after denial of class certification, "prefer to bring an individual suit rather than intervene . . . once the economies of a class action [are] no longer available." 462 U. S., at 350, 353–354; see *California Public Employees' Retirement System* v. *ANZ Securities, Inc.*, 582 U. S. \_\_\_, \_\_\_ (2017) (slip op., at 13) (*American Pipe* "permitt[ed] a class action to splinter into individual suits"); *Smith* v. *Bayer Corp.*,

564 U. S. 299, 313–314, n. 10 (2011) (under *American Pipe* tolling rule, "a putative member of an uncertified class may wait until after the court rules on the certification motion to file an individual claim or move to intervene in the [existing] suit").

The question presented in the case now before us: Upon denial of class certification, may a putative class member, in lieu of promptly joining an existing suit or promptly filing an individual action, commence a class action anew beyond the time allowed by the applicable statute of limitations? Our answer is no. *American Pipe* tolls the statute of limitations during the pendency of a putative class action, allowing unnamed class members to join the action individually or file individual claims if the class fails. But *American Pipe* does not permit the maintenance of a follow-on class action past expiration of the statute of limitations.

I

The instant suit is the third class action brought on behalf of purchasers of petitioner China Agritech's common stock, alleging violations of the Securities Exchange Act of 1934, 48 Stat. 881, as amended, 15 U. S. C. §78a *et seq.* In short, the successive complaints each make materially identical allegations that China Agritech engaged in fraud and misleading business practices, causing the company's stock price to plummet when several reports brought the misconduct to light. See App. 60–100 (*Resh* complaint), 205–235 (*Smyth* complaint), 133–156 (*Dean* complaint). The Exchange Act has a two-year statute of limitations that begins to run upon discovery of the facts constituting the violation. 28 U. S. C. §1658(b). The Act also has a five-year statute of repose. *Ibid.*[1] The

--------

[1] A statute of limitations "begin[s] to run when the cause of action accrues—that is, when the plaintiff can file suit and obtain relief." *California Public Employees' Retirement System* v. *ANZ Securities, Inc.*,

parties agree that the accrual date for purposes of the two-year limitation period is February 3, 2011, and for the five-year repose period, November 12, 2009. Brief for Respondents 8, n. 3.

Theodore Dean, a China Agritech shareholder, filed the first class-action complaint on February 11, 2011, at the start of the two-year limitation period. As required by the Private Securities Litigation Reform Act of 1995 (PSLRA), 109 Stat. 737, Dean's counsel posted notice of the action in two "widely circulated national business-oriented publication[s]," 15 U. S. C. §78u–4(a)(3)(A)(i), and invited any member of the purported class to move to serve as lead plaintiff. App. 274–280. Six shareholders responded to the notice, seeking to be named lead plaintiffs; other shareholders who had filed their own class complaints dismissed them in view of the *Dean* action. On May 3, 2012, after several months of discovery and deferral of a lead-plaintiff ruling, the District Court denied class certification. The plaintiffs, the District Court determined, had failed to establish that China Agritech stock traded on an efficient market—a necessity for proving reliance on a classwide basis. App. 192. Dean's counsel then published a notice informing shareholders of the certification denial and advising: "You must act yourself to protect your rights. You may protect your rights by joining in the current Action as a plaintiff or by filing your own action against China Agritech." *Id.*, at 281–282. The *Dean* action settled in September 2012, occasioning dismissal of the suit. See 857 F. 3d 994, 998 (CA9 2017).

On October 4, 2012—within the two-year statute of limitations—Dean's counsel filed a new complaint (*Smyth*)

_____

582 U. S. ___, ___ (2017) (slip op., at 5) (internal quotation marks omitted). A statute of repose, by contrast, "begin[s] to run on the date of the last culpable act or omission of the defendant." *Ibid.* (internal quotation marks omitted).

with a new set of plaintiffs and new efficient-market evidence. Eight shareholders responded to the PSLRA notice, seeking lead-plaintiff appointment. The District Court again denied class certification, this time on typicality and adequacy grounds. See App. 254. Thereafter, the *Smyth* plaintiffs settled their individual claims with the defendants and voluntarily dismissed their suit. Because the *Smyth* litigation was timely commenced, putative class members who promptly initiated *individual* suits in the wake of the class-action denial would have encountered no statute of limitations bar.

Respondent Michael Resh, who had not sought lead-plaintiff status in either the *Dean* or *Smyth* proceedings and was represented by counsel who had not appeared in the earlier actions, filed the present suit on June 30, 2014, styling it a class action—a year and a half after the statute of limitations expired. The other respondents moved to intervene, seeking designation as lead plaintiffs; together with Resh, they filed an amended complaint. The District Court dismissed the class complaint as untimely, holding that the *Dean* and *Smyth* actions did not toll the time to initiate class claims. App. to Pet. for Cert. 36a.

The Court of Appeals for the Ninth Circuit reversed: "[P]ermitting future class action named plaintiffs, who were unnamed class members in previously uncertified classes, to avail themselves of *American Pipe* tolling," the court reasoned, "would advance the policy objectives that led the Supreme Court to permit tolling in the first place." 857 F. 3d, at 1004. Applying *American Pipe* tolling to successive class actions, the Ninth Circuit added, would cause no unfair surprise to defendants and would promote economy of litigation by reducing incentives for filing protective class suits during the pendency of an initial certification motion. 857 F. 3d, at 1004.

We granted certiorari, 583 U. S. ___ (2017), in view of a division of authority among the Courts of Appeals over

whether otherwise-untimely successive class claims may be salvaged by *American Pipe* tolling. Compare the instant case and *Phipps* v. *Wal-Mart Stores, Inc.*, 792 F. 3d 637, 652–653 (CA6 2015) (applying *American Pipe* tolling to successive class action), with, *e.g., Basch* v. *Ground Round, Inc.*, 139 F. 3d 6, 11 (CA1 1998) ("Plaintiffs may not stack one class action on top of another and continue to toll the statute of limitations indefinitely."); *Griffin* v. *Singletary*, 17 F. 3d 356, 359 (CA11 1994) (similar); *Korwek* v. *Hunt*, 827 F. 2d 874, 879 (CA2 1987) (*American Pipe* does not apply to successive class suits); *Salazar-Calderon* v. *Presidio Valley Farmers Assn.*, 765 F. 2d 1334, 1351 (CA5 1985) ("Plaintiffs have no authority for their contention that putative class members may piggyback one class action onto another and thus toll the statute of limitations indefinitely, nor have we found any."). See also *Yang* v. *Odom*, 392 F. 3d 97, 112 (CA3 2004) (*American Pipe* tolling does not apply to successive class actions where certification was previously denied due to a class defect, but does apply when certification was denied based on the putative representative's deficiencies).

## II
### A

*American Pipe* established that "the commencement of the original class suit tolls the running of the statute [of limitations] for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status." 414 U. S., at 553. "A contrary rule," the Court reasoned in *American Pipe*, "would deprive [Federal Rule of Civil Procedure] 23 class actions of the efficiency and economy of litigation which is a principal purpose of the procedure." *Ibid.* This is so, the Court explained, because without tolling, "[p]otential class members would be induced to file protective motions to intervene or to join in the event that

a class was later found unsuitable." *Ibid.* In *Crown, Cork*, the Court further elaborated: Failure to extend the *American Pipe* rule "to class members filing separate actions," in addition to those who move to intervene, would result in "a needless multiplicity of actions" filed by class members preserving their individual claims—"precisely the situation that Federal Rule of Civil Procedure 23 and the tolling rule of *American Pipe* were designed to avoid." 462 U. S., at 351.

*American Pipe* and *Crown, Cork* addressed only putative class members who wish to sue individually after a class-certification denial. See, *e.g., American Pipe*, 414 U. S., at 552 (addressing "privilege of intervening in an individual suit"); *Crown, Cork*, 462 U. S., at 349 (applying *American Pipe* to those who "file individual actions"); 462 U. S., at 352 (tolling benefits "class members who choose to file separate suits").

What about a putative class representative, like Resh, who brings his claims as a new class action after the statute of limitations has expired? Neither decision so much as hints that tolling extends to otherwise time-barred class claims. We hold that *American Pipe* does not permit a plaintiff who waits out the statute of limitations to piggyback on an earlier, timely filed class action. The "efficiency and economy of litigation" that support tolling of individual claims, *American Pipe*, 414 U. S., at 553, do not support maintenance of untimely successive class actions; any additional *class* filings should be made early on, soon after the commencement of the first action seeking class certification.

*American Pipe* tolls the limitation period for individual claims because economy of litigation favors delaying those claims until after a class-certification denial. If certification is granted, the claims will proceed as a class and there would be no need for the assertion of any claim individually. If certification is denied, only then would it

be necessary to pursue claims individually.

With class claims, on the other hand, efficiency favors early assertion of competing class representative claims. If class treatment is appropriate, and all would-be representatives have come forward, the district court can select the best plaintiff with knowledge of the full array of potential class representatives and class counsel. And if the class mechanism is not a viable option for the claims, the decision denying certification will be made at the outset of the case, litigated once for all would-be class representatives.[2]

Rule 23 evinces a preference for preclusion of untimely successive class actions by instructing that class certification should be resolved early on. See Fed. Rule Civ. Proc. 23(c)(1)(A). Indeed, Rule 23(c) was amended in 2003 to permit district courts to take account of multiple class-representative filings. Before the amendment, Rule 23(c) encouraged district courts to issue certification rulings "as soon as practicable." The amendment changed the recommended timing target to "an early practicable time." The alteration was made to allow greater leeway, more time for class discovery, and additional time to "explore designation of class counsel" and consider "additional

—————

[2] Encouraging early class filings will help ensure sufficient time remains under the statute of limitations, in the event that certification is denied for one of the actions or a portion of the class. Subclasses might be pleaded in one or more complaints and taken up if necessary; as class discovery proceeds and weaknesses in the class theory or adequacy of representation come to light, the lead complaint might be amended or a new plaintiff might intervene. See Brief of Plaintiffs in Post-*Dukes* Successor Class Actions as *Amici Curiae* 8–10 (describing regional subclasses asserted in the *Dukes* v. *Wal-Mart* litigation following this Court's decision decertifying the nationwide class, *Wal-Mart Stores, Inc.* v. *Dukes*, 564 U. S. 338 (2011)); Pierce, Improving Predictability and Consistency in Class Action Tolling, 23 Geo. Mason L. Rev. 339, 349 (2016) (some *Dukes* plaintiffs moved to amend the original complaint to replead subclasses).

[class counsel] applications rather than deny class certification," thus "afford[ing] the best possible representation for the class." Advisory Committee's 2003 Note on subds. (c)(1)(A) and (g)(2)(A) of Fed. Rule Civ. Proc. 23, 28 U. S. C. App., pp. 815, 818; see Willging & Lee, From Class Actions to Multidistrict Consolidations: Aggregate Mass-Tort Litigation after *Ortiz*, 58 U. Kan. L. Rev. 775, 785 (2010) (2003 amendments "raised the standard for certifying a class from an early, conditional ruling to a later, relatively final decision" and "expand[ed] the opportunity for parties to engage in discovery prior to moving for class certification").

The PSLRA, which governs this litigation, evinces a similar preference, this time embodied in legislation, for grouping class-representative filings at the outset of litigation. See *supra,* at 3. When the *Dean* and *Smyth* timely commenced actions were first filed, counsel put any shareholder who might wish to serve as lead plaintiff on notice of the action. Several heeded the call—six in *Dean* and eight in *Smyth*. See 857 F. 3d, at 997–998. The PSLRA, by requiring notice of the commencement of a class action, aims to draw all potential lead plaintiffs into the suit so that the district court will have the full roster of contenders before deciding which contender to appoint.[3]

---

[3] Although the Private Securities Litigation Reform Act of 1995 (PSLRA), 109 Stat. 737, includes a presumption that the most adequate plaintiff is the one who moves first and has the largest financial interest in the case, see 15 U. S. C. §78u–4(a)(3)(B)(iii)(I), multiple potential lead plaintiffs have reason to apply for the role because there may not be an obvious candidate. Which plaintiff has the largest financial interest may not be immediately apparent; the statute does not define the term, and the size of a shareholder's financial interest can depend on how many shares were purchased and sold, when, and at what price, as well as the order in which the losses are tallied. See, *e.g., Cortina* v. *Anavex Life Sciences Corp.*, 2016 WL 1337305 (SDNY, Apr. 5, 2016). District courts often permit aggregation of plaintiffs into plaintiff groups, so even a small shareholder could apply for lead-plaintiff

See Brief for Securities Industry and Financial Markets Association as *Amicus Curiae* 12–13 (PSLRA "seeks to achieve Congress['] goal of curbing duplicative . . . litigation by encouraging all interested parties to apply to serve as lead plaintiff at the early stages of the case [and] providing for the consolidation of similar class actions"). With notice and the opportunity to participate in the first (and second) round of class litigation, there is little reason to allow plaintiffs who passed up those opportunities to enter the fray several years after class proceedings first commenced.

Ordinarily, to benefit from equitable tolling, plaintiffs must demonstrate that they have been diligent in pursuit of their claims. See, *e.g., McQuiggin* v. *Perkins*, 569 U. S. 383, 391 (2013); *Menominee Tribe of Wis.* v. *United States*, 577 U. S. \_\_\_, \_\_\_ (2016) (slip op., at 5). Even *American Pipe*, which did not analyze "criteria of the formal doctrine of equitable tolling in any direct manner," *ANZ*, 582 U. S., at \_\_\_–\_\_\_ (slip op., at 10–11), observed that tolling was permissible in the circumstances because plaintiffs who later intervened to pursue individual claims had not slept on their rights, *American Pipe*, 414 U. S., at 554–555. Those plaintiffs reasonably relied on the class representative, who sued timely, to protect their interests in their individual claims. See *Crown, Cork*, 462 U. S., at 350. A would-be class representative who commences suit after expiration of the limitation period, however, can hardly qualify as diligent in asserting claims and pursuing relief.

——————

status, hoping to join with other shareholders to create a unit with the largest financial interest. See Choi & Thompson, Securities Litigation and Its Lawyers: Changes During the First Decade After the PSLRA, 106 Colum. L. Rev. 1489, 1507, 1521, 1530 (2006) (80% of securities class actions in post-PSLRA data sample had two or more co-lead counsel firms). Thus, it is a reasonable expectation that, in litigation governed by the PSLRA, a district court will have several competing candidates for lead plaintiff to choose among.

Her interest in representing the class as lead plaintiff, therefore, would not be preserved by the prior plaintiff's timely filed class suit.

Respondents' proposed reading would allow the statute of limitations to be extended time and again; as each class is denied certification, a new named plaintiff could file a class complaint that resuscitates the litigation. See *Yang*, 392 F. 3d, at 113 (Alito, J., concurring in part and dissenting in part) (tolling for successive class actions could allow "lawyers seeking to represent a plaintiff class [to] extend the statute of limitations almost indefinitely until they find a district court judge who is willing to certify the class"); *Ewing Industries Corp.* v. *Bob Wines Nursery, Inc.*, 795 F. 3d 1324, 1326 (CA11 2015) (tolling for successive class actions allows plaintiffs "limitless bites at the apple").[4]  This prospect points up a further distinction between the individual-claim tolling established by *American Pipe* and tolling for successive class actions. The time to file individual actions once a class action ends is finite, extended only by the time the class suit was pending; the time for filing successive class suits, if tolling were allowed, could be limitless. Respondents' claims happen to be governed by 28 U. S. C. §1658(b)(2)'s five-year statute of repose, so the time to file complaints has a finite end. Statutes of repose, however, are not ubiquitous.  See

──────────

[4] Respondents observe that in *Smith* v. *Bayer Corp.*, 564 U. S. 299 (2011), we held that federal class-certification denials do not have preclusive effect in subsequent state-court suits, despite concerns about successive class actions. See Brief for Respondents 40–41.  But in *Smith*, we were guided by "the fundamental nature of the general rule that only parties can be bound by prior judgments." 564 U. S., at 313 (internal quotation marks omitted). The state-court plaintiffs were not parties to the federal-court litigation, hence they could not be bound by its holding—despite a "stron[g] argument" about the inefficiencies of serial class relitigation supporting the contrary position. *Id.,* at 316. No such countervailing presumption favors Resh's untimely third federal class suit.

*Dekalb County Pension Fund* v. *Transocean Ltd.*, 817 F. 3d 393, 397 (CA2 2016). Most statutory schemes provide for a single limitation period without any outer limit to safeguard against serial relitigation. Endless tolling of a statute of limitations is not a result envisioned by *American Pipe*.[5]

## B

Respondents emphasize that in *Shady Grove Orthopedic Associates, P. A.* v. *Allstate Ins. Co.*, 559 U. S. 393 (2010), we said that "a class action may be maintained," *id.*, at 398 (internal quotation marks omitted), if the requirements of Rule 23(a) and (b) are satisfied, and "Rule 23 *automatically* applies in all civil actions and proceedings in the United States district courts," *id.,* at 400 (internal quotation marks omitted). See Brief for Respondents 21–23. If Resh's suit meets the requirements of Rule 23(a) and (b), respondents assert, there is no reason why Resh's suit cannot proceed as a class action. *Shady Grove* does not call for that outcome. In *Shady Grove*, the Court held that a federal diversity action could proceed under Rule 23 despite a state law prohibiting class treatment of suits

―――――――

[5] JUSTICE SOTOMAYOR suggests that the Court might adopt a rule under which tolling "becomes unavailable for future class claims where class certification is denied for a reason that bears on the suitability of the claims for class treatment," but not where "class certification is denied because of the deficiencies of the lead plaintiff as class representative." *Post,* at 5; see *Yang* v. *Odom*, 392 F. 3d 97, 112 (CA3 2004) (embracing similar rule). But Rule 23 contains no instruction to give denials of class certification different effect based on the reason for the denial. And as the Advisory Committee Notes explain, affording district courts time to consider competing claims for class representation will advance the likelihood that lead plaintiff or class counsel deficiencies will be discovered and acted upon early in the litigation. See *supra,* at 7–8. Rule 23 and putative class members' own interests in adequate representation, and the efficient adjudication thereof, weigh heavily against tolling for successive class actions. There is nothing inequitable in following these guides. See *post,* at 5, n. 2.

seeking damages of the kind asserted in the *Shady Grove* complaint. 559 U. S., at 396, 416. Our opinion in *Shady Grove* addressed a case in which a Rule 23 class action could have been maintained absent a contrary state-law command. *Id.*, at 396. Resh's case presents the reverse situation: The class action would be untimely unless saved by *American Pipe*'s equitable-tolling exception to statutes of limitations. Rule 23 itself does not address timeliness of claims or tolling and nothing in the Rule calls for the revival of class claims if individual claims are tolled. In fact, as already explained, Rule 23 prescribes the opposite result. See *supra,* at 6–8.

Today's clarification of *American Pipe*'s reach does not run afoul of the Rules Enabling Act by causing a plaintiff's attempted recourse to Rule 23 to abridge or modify a substantive right. See Brief for Respondents 23–26 (citing *Tyson Foods, Inc.* v. *Bouaphakeo*, 577 U. S. ___ (2016)). Plaintiffs have no substantive right to bring their claims outside the statute of limitations. That they may do so, in limited circumstances, is due to a judicially crafted tolling rule that itself does not abridge, enlarge, or modify any substantive right. *American Pipe*, 414 U. S., at 558. Without *American Pipe*, respondents would have no peg to seek tolling here; as we have explained, however, *American Pipe* does not provide for the extension of the statute of limitations sought by Resh for institution of an untimely third class suit.

Respondents urge that *American Pipe*'s logic in fact supports their position because declining to toll the limitation period for successive class suits will lead to a "needless multiplicity" of protective class-action filings. Brief for Respondents 32–34. See also *post,* at 6–7 (expressing concern about duplicative and dueling class actions). But there is little reason to think that protective class filings will substantially increase. Several Courts of Appeals have already declined to read *American Pipe* to permit a

successive class action filed outside the limitation period. See *supra,* at 5; 3 W. Rubenstein, Newberg on Class Actions §9:64, n. 5 (5th ed. 2012). These courts include the Second and Fifth Circuits (no strangers to class-action practice); both courts declined to entertain out-of-time class actions in the 1980's. See *Korwek*, 827 F. 2d 874 (CA2 1987); *Salazar-Calderon*, 765 F. 2d 1334 (CA5 1985). Respondents and their *amici* make no showing that these Circuits have experienced a disproportionate number of duplicative, protective class-action filings.

*Amicus* National Conference on Public Employee Retirement Systems cites examples of protective filings responding to courts' disallowance of *American Pipe* tolling for statutes of repose, but those examples in fact suggest that protective class filings are uncommon. See Brief of the National Conference on Public Employee Retirement Systems as *Amicus Curiae* 7–8. Between dozens and hundreds of class plaintiffs filed protective *individual* claims while class-certification motions were pending in securities cases and the statute of repose was about to run out, placing a permanent bar against their claims. *Ibid.* But none of the plaintiffs appears to have filed a protective *class* action—even though, if the statute of repose expired and the pending class-certification motions were denied, there would be no further opportunity to assert class claims.[6]

Nor do the incentives of class-action practice suggest that many more plaintiffs will file protective class claims as a result of our holding. Any plaintiff whose individual claim is worth litigating on its own rests secure in the

---

[6] The Second Circuit *Petrobras* litigation, referenced in *amicus*' brief, illustrates that multiple timely class filings do not sow unmanageable chaos. Five class actions were filed there and consolidated, along with individual claims, for pretrial purposes, including class-certification determination. See *In re Petrobras Securities*, 862 F. 3d 250, 258 (CA2 2017).

knowledge that she can avail herself of *American Pipe* tolling if certification is denied to a first putative class. The plaintiff who seeks to preserve the ability to lead the class—whether because her claim is too small to make an individual suit worthwhile or because of an attendant financial benefit[7]—has every reason to file a class action early, and little reason to wait in the wings, giving another plaintiff first shot at representation.

In any event, as previously explained, see *supra,* at 6–8, a multiplicity of class-action filings is not necessarily "needless." Indeed, multiple filings may aid a district court in determining, early on, whether class treatment is warranted, and if so, which of the contenders would be the best representative. And sooner rather than later filings are just what Rule 23 encourages. See *ibid*. Multiple timely filings might not line up neatly; they could be filed in different districts, at different times—perhaps when briefing on class certification has already begun—or on behalf of only partially overlapping classes. See Wasserman, Dueling Class Actions, 80 B. U. L. Rev. 461, 464–465 (2000) (describing variety of "dueling" class filings). But district courts have ample tools at their disposal to manage the suits, including the ability to stay, consolidate, or transfer proceedings. District courts are increasingly familiar with overseeing such complex cases, given the surge in multidistrict litigation. See Cabraser & Issacharoff, The Participatory Class Action, 92 N. Y. U. L. Rev. 846, 850–851 (2017) (multidistrict litigation frequently combines individual suits and multiple putative class actions). The Federal Rules provide a range of mechanisms to aid courts in this endeavor. What the Rules do not offer is a reason to permit plaintiffs to exhume failed

_____

[7] The class representative might receive a share of class recovery above and beyond her individual claim. See, *e.g., Cook* v. *Niedert*, 142 F. 3d 1004, 1016 (CA7 1998) (affirming class representative's $25,000 incentive award).

class actions by filing new, untimely class claims.

\*    \*    \*

The watchwords of *American Pipe* are efficiency and economy of litigation, a principal purpose of Rule 23 as well. Extending *American Pipe* tolling to successive class actions does not serve that purpose. The contrary rule, allowing no tolling for out-of-time class actions, will propel putative class representatives to file suit well within the limitation period and seek certification promptly. For all the above-stated reasons, it is the rule we adopt today: Time to file a class action falls outside the bounds of *American Pipe*.

Accordingly, the judgment of the Court of Appeals for the Ninth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

———————

No. 17–432

———————

## CHINA AGRITECH, INC., PETITIONER *v.* MICHAEL H. RESH, ET AL.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[June 11, 2018]

JUSTICE SOTOMAYOR, concurring in the judgment.

I agree with the Court that in cases governed by the Private Securities Litigation Reform Act of 1995 (PSLRA), 15 U. S. C. §78u–4, like this one, a plaintiff who seeks to bring a successive class action may not rely on the tolling rule established by *American Pipe & Constr. Co.* v. *Utah*, 414 U. S. 538 (1974). I cannot, however, join the majority in going further by holding that the same is true for class actions not subject to the PSLRA.

I

A

To understand why the PSLRA is essential to the conclusion the Court reaches here, recall that this case involves a putative class-action lawsuit brought by a plaintiff with a timely individual claim, joined by coplaintiffs with timely individual claims, on behalf of a putative class of absent class members with timely individual claims. See *ante,* at 4. One might naturally think, then, that the class claims in the lawsuit are timely. The majority, however, concludes that the named plaintiffs' and putative class members' class claims are time barred.

At first blush, this result might seem surprising, for the Court has rejected the idea that class claims are categorically different from individual claims. See *Shady Grove*

*Orthopedic Associates, P. A.* v. *Allstate Ins. Co.*, 559 U. S. 393, 398 (2010). Although it did not hold that class claims may never be treated differently from individual claims, *Shady Grove* indicates that there must be a special reason for doing so.

Here, the PSLRA supplies that special reason. The PSLRA imposes significant procedural requirements on securities class actions that do not apply to individual or traditionally joined securities claims. See §78u–4(a)(1).

Foremost among these requirements is a process for the "[a]ppointment of lead plaintiff." §78u–4(a)(3). Under the PSLRA, the named plaintiff in a putative class action must publish within 20 days of filing the complaint a nationwide notice alerting putative class members to the filing of the suit and informing them that, "not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff." §78u–4(a)(3)(A)(i). The district court then must evaluate all prospective lead plaintiffs and choose the "most adequate" one based on a set of enumerated considerations. §78u–4(a)(3)(B). The PSLRA thus contemplates a process by which all prospective class representatives come forward in the first-filed class action and make their arguments to the court for lead-plaintiff status. See H. R. Conf. Rep. No. 104–369, p. 32 (1995).

Respondents here bypassed that statutory process. They do not dispute that notice was published in the two earlier-filed putative class actions concerning the same securities claims as here, as required by the PSLRA. Yet they did not seek to be chosen lead plaintiffs in either of those actions. See *ante,* at 3–4, 8. For that reason alone, I agree with the majority that respondents "can hardly qualify as diligent in asserting [class] claims and pursuing relief." *Ante,* at 9. Respondents' failure to utilize the PSLRA's lead-plaintiff selection procedure distinguishes them from the *American Pipe* absent class members, who

were subject only to the traditional Federal Rule of Civil Procedure 23 class procedure, which is "designed to avoid, rather than encourage, unnecessary filing of repetitious papers and motions." 414 U. S., at 550.

Unlike the PSLRA, Rule 23 contains no requirement of precertification notice to absent putative class members; it provides only for postcertification notice. See Fed. Rule Civ. Proc. 23(c)(2). There thus is no mechanism for absent putative class members to learn that a putative class action is pending, much less that they are entitled to seek to displace the named plaintiff in that lawsuit as class representative. Also unlike the PSLRA, Rule 23 contains no process for a district court to choose from among the various candidates for lead plaintiff, nor does it specify what would make a person the most adequate representative of the class. See 7A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure §1765, p. 321 (3d ed. 2005). In class actions not subject to the PSLRA, the class representative is generally the first person who files the suit, and so is self-selected (subject to an adequacy determination), rather than selected by the court.[1] See Rule 23(a)(4) ("One or more members of a class may sue or be sued as representative parties on behalf of all members only if . . . the representative parties will fairly and adequately protect the interests of the class"); Rule 23(c)(1)(A) ("At an early practicable time after a person sues or is sued as a class representative, the court must determine

----

[1] There may, of course, be competition among putative class members to proceed on behalf of the putative class in an action not governed by the PSLRA, and the district court generally considers their relative qualities. But the point is that the court is not required by Rule 23 to identify and designate as lead plaintiff the person most capable of adequately representing the class; it is only required to determine for certification purposes whether the class representative adequately represents the class. See 7A Wright, Federal Practice and Procedure §1765, at 321.

by order whether to certify the action as a class action"); H. R. Conf. Rep. No. 104–369, at 33–35.

The majority points to Rule 23(c)'s requirement that the determination whether to certify a class be made at "'an early practicable time,'" *ante,* at 7, but there is no significance to that requirement with respect to the diligence of would-be class representatives. The Advisory Committee notes accompanying the 2003 amendment to Rule 23(c), which changed the recommended timing for a certification determination from "as soon as practicable" to "at an early practicable time," explained that the change would permit time for "controlled discovery into the 'merits,'" efforts by defendants "to win dismissal or summary judgment as to the individual plaintiffs without certification," and the considered "designation of class counsel." Advisory Committee's 2003 Notes on subd. (c)(1)(A) of Fed. Rule Civ. Proc. 23, 28 U. S. C. App., p. 815. The notes say nothing about lead-plaintiff selection, and Rule 23(c) in no way ensures that potential lead plaintiffs know about the putative class action or about their opportunity to represent the class.

Given these important differences between Rule 23's general class procedures and the specific procedures imposed by the PSLRA, the majority's conclusion that absent class members were not diligent because they failed to ask to be the class representative in a prior suit makes sense only in the PSLRA context. The same conclusion simply does not follow in the generic Rule 23 context, where absent class members are most likely unaware of the existence of a putative class action. Cf. *American Pipe*, 414 U. S., at 551–552 (explaining that even absent class members who are unaware of the putative class action are entitled to tolling).

## B

In addition to its focus on plaintiff diligence, the majority

offers a separate line of reasoning to support its broad holding. It explains that its limitation on *American Pipe* tolling is necessary to prevent a "limitless" series of class actions, each rendered timely by the tolling effect of the previous ones. *Ante*, at 10. As the majority acknowledges, however, there is no such risk in this case, see *ibid.*, because the applicable statute of repose puts a 5-year "outer limit on the right to bring a civil action." *CTS Corp.* v. *Waldburger*, 573 U. S. \_\_\_, \_\_\_ (2014) (slip op., at 6). The majority is right, of course, that in many other types of cases, no statute of repose will apply. See *ante,* at 10–11. But the Court has elsewhere pointed to the power of "comity among courts to mitigate the sometimes substantial costs of similar litigation brought by different plaintiffs." *Smith* v. *Bayer Corp.*, 564 U. S. 299, 317 (2011). There is no reason to assume that this existing safeguard will prove inadequate if the Court holds that *American Pipe* tolling is available for successive class actions outside the PSLRA context.

Even if principles of comity prove insufficient such that some modification to the *American Pipe* rule is necessary to prevent indefinite tolling, a narrower form of redress is available. Instead of adopting a blanket no-tolling-of-class-claims-ever rule outside the PSLRA context, the Court might hold, as a matter of equity, that tolling only becomes unavailable for future class claims where class certification is denied for a reason that bears on the suitability of the claims for class treatment. Where, by contrast, class certification is denied because of the deficiencies of the lead plaintiff as class representative, or because of some other nonsubstantive defect, tolling would remain available.[2] See *Yang* v. *Odom*, 392 F. 3d 97, 112 (CA3

─────────

[2] Such an approach would, of course, be "grounded in the traditional equitable powers of the judiciary," which are "the source of the tolling rule applied in *American Pipe*," and not Rule 23, which "does not so

2004). This approach would, for instance, ensure that in cases where the only problem with the first suit was the identity of the named plaintiff, a new and more adequate representative could file another suit to represent the class. Preserving the opportunity for such a fix may seem unimportant in a PSLRA case like this one, where the court in the first-filed case will usually have a choice among possible lead plaintiffs. See *ante,* at 8–9, n. 3. But, as just explained, in class actions not subject to the PSLRA, the certifying court often will have no choice as to the class representative.

Whether this or another rule ultimately is the right one, there is no need for the Court today to reach beyond the facts of this case, where the specter of indefinite tolling is merely hypothetical, and foreclose the possibility of a more tailored approach.

## C

Finally, the majority suggests that its broader approach will encourage multiple potential class representatives to come forward early, which may "aid a district court" in making class certification decisions. *Ante,* at 14. This may well be so in the PSLRA context, given the statute's notice requirement and built-in mechanism for selecting the most adequate lead plaintiff. But in suits not covered by the PSLRA, absent class members may not know of the pending class action early enough to "aid" the court, and will likely have to file a completely separate lawsuit if what they seek is lead-plaintiff status.

In addition to increasing the number of unnecessary filings, a result at odds with *American Pipe*'s concern with avoiding "needless duplication," 414 U. S., at 554, the existence of multiple putative class actions covering the

—————

much as mention the extension or suspension of statutory time bars." *California Public Employees' Retirement System* v. *ANZ Securities, Inc.*, 582 U. S. ___, ___ (2017) (slip op., at 10); see *ante,* at 11, n. 5.

same harm to the same class may lead to a "race toward judgment or settlement." Wasserman, Dueling Class Actions, 80 B. U. L. Rev. 461, 472 (2000). Each class lawyer knows that only the lawyers in the first-resolved case will get paid, because the other suits will then be dismissed on claim-preclusion grounds. *Ibid.* Defense lawyers know this, too, so they are "able to engage in a 'reverse auction,' pitting the various class counsel against one another and agreeing to settle with the lawyer willing to accept the lowest bid on behalf of the class." *Id.,* at 473. This gamesmanship is not in class members' interest, nor in the interest of justice. I therefore think it unwise to encourage the filing of such dueling class actions outside the PSLRA context.

## II

Although there is ample support for denying *American Pipe* tolling to successive class actions subject to the PSLRA, the majority's reasoning does not justify denying *American Pipe* tolling to other successive class actions. The majority could have avoided this error by limiting its decision to the issues presented by the facts of this case.

Despite the Court's misstep in adopting an unnecessarily broad rule, district courts can help mitigate the potential unfairness of denying *American Pipe* tolling to class claims not subject to the PSLRA. Where appropriate, district courts should liberally permit amendment of the pleadings or intervention of new plaintiffs and counsel.

Because I agree with the majority's conclusion just as applied to class actions governed by the PSLRA, like this one, I concur only in the judgment.