# United States Court of Appeals
## For the First Circuit

No. 23-1820

MSP RECOVERY CLAIMS, SERIES LLC; MSPA CLAIMS 1 LLC; SERIES PMPI,

Plaintiffs, Appellants,

v.

FRESENIUS MEDICAL CARE HOLDINGS, INC.; FRESENIUS USA, INC.;
FRESENIUS USA MANUFACTURING, INC.; FRESENIUS USA MARKETING,
INC.; FRESENIUS USA SALES, INC.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Montecalvo, Lynch, and Kayatta,
Circuit Judges.

Janpaul Portal, with whom Aida M. Landa, John W. Cleary, and
MSP Recovery Law Firm were on brief, for appellants.
James F. Bennett, with whom Megan S. Heinsz, Hannah F.
Preston, Dowd Bennett LLP, Maria R. Durant, and Hogan Lovells US
LLP were on brief, for appellees.

March 17, 2025

**KAYATTA**, **Circuit Judge**. Plaintiffs MSP Recovery Claims, Series LLC; MSPA Claims 1, LLC; and Series PMPI (collectively "MSP") filed the present suit in September 2018, six years after their claims first accrued in 2012. In the normal course, this delay would have rendered the suit untimely under all relevant statutes of limitations. MSP contends, however, that an earlier-filed putative class action tolled the statutes of limitations from 2013 through 2019 under the rule of American Pipe & Construction Co. v. Utah, 414 U.S. 538 (1974). The district court disagreed. For the following reasons, so do we.

## I.

## A.

Defendants Fresenius Medical Care Holdings, Fresenius USA, Fresenius USA Manufacturing, and Fresenius USA Marketing[1] (collectively "Fresenius") manufacture and distribute GranuFlo, an acid concentrate used in hemodialysis treatments. On March 29, 2012, Fresenius issued a public memorandum explaining that GranuFlo could lead to cardiopulmonary arrest in certain patients and advising doctors to "exercise their best clinical judgment" when prescribing and administering treatments.

This announcement triggered a stream of wrongful death and personal injury lawsuits against Fresenius, including, as

---

[1] Defendant Fresenius USA Sales dissolved in 2010 and is no longer a legal entity.

relevant here, a putative class action filed on March 21, 2013, in the Eastern District of Louisiana (the "Berzas action"). See Class Action Compl., Berzas v. Fresenius Med. Care Holdings, Inc., No. 13-cv-00529 (E.D. La. Mar. 21, 2023). The Berzas action was a "product liability action to recover damages for injuries sustained . . . as the direct and proximate result of the wrongful conduct of the Defendants in connection with the designing, developing, manufacturing, distributing, labeling, advertising, marketing, promoting, and selling of" GranuFlo and NaturaLyte (a related product). Id. at 2. The nine named plaintiffs sought damages for themselves and declared a desire to represent a class of

> [a]ll consumers and third-party payors in the United States and its territories who, for purposes other than resale, purchased, reimbursed and/or paid for NATURALYTE and/or GRANUFLO from May 1, 2003 to present. For purposes of the Class definition, individuals and entities "purchased" NATURALYTE and/or GRANUFLO if they paid some or the entire purchase price.

Id. at 46. They alleged that GranuFlo and NaturaLyte were defective and that Fresenius had engaged in deceptive and unfair trade practices in marketing and distributing the products. Id. at 49-57.

The Berzas action was transferred to the District of Massachusetts as part of the consolidated multidistrict litigation ("MDL") of all GranuFlo claims. On February 13, 2014, the parties

- 3 -

entered into a revised case management order. Pursuant to that order, each Berzas plaintiff agreed to adopt the pleadings contained in a "Master Complaint" that "set forth the claims that individual Plaintiffs and/or the estates and/or heirs of deceased persons may assert against Defendants in this litigation." Each plaintiff further agreed to adopt and submit a "Short Form Complaint" that would incorporate the Master Complaint and "replace" that party's original complaint.

On March 18, 2014, five of the nine named Berzas plaintiffs filed Short Form Complaints on behalf of themselves and their deceased next of kin. Each of those five Short Form Complaints included a section specifying on whose behalf the claims were being brought and a checklist of the counts articulated in the Master Complaint that the specific action incorporated. Without fail, each of the complaints identified only the named plaintiff and/or that plaintiff's next of kin as the represented parties. The other four named plaintiffs filed stipulations of dismissal on June 27, 2014.

To recap, in June of 2014 the court record as to the Berzas action was clear: The Berzas plaintiffs no longer had before the court any request to pursue claims on behalf of any class. That apparent clarity, though, only lasted seven months. In January of 2015, the court stated that the 2014 adoption of the Master Complaint and the filing of the Short Form Complaint did

- 4 -

not "necessarily supersede[]" a plaintiff's original complaint "for purposes of motion to dismiss practice." The court noted that an amended complaint, once filed, typically replaces the complaint that came before. However, it suggested that the normal rule might not apply to the MDL context, where the Master Complaint served as a mere "administrative device."

Statements by counsel for both sides created further confusion. At a March 2, 2015 conference with the court, which the Berzas plaintiffs' counsel did not attend, the district court mentioned to MDL plaintiffs' counsel and defense counsel that the Judicial Panel on Multidistrict Litigation statistics showed no remaining GranuFlo class actions pending. Defense counsel replied that there were three such actions that he knew of off the top of his head, including Berzas. When asked why the class actions were still "hanging out there," defense counsel stated, "In all candor, I don't remember the specifics of Berzas. . . . I can certainly do some digging on those cases and get back to you about it." In light of that response, the court stated that it might revisit the issue and that it planned to "contact the Clerk at the Panel and say, 'We have got three class actions in this MDL.'"

In the next status conference on April 10, 2015, MDL plaintiffs' counsel said to the court that Berzas was a still-pending class action. He added that leadership counsel was nevertheless "not planning on moving for certification," and that

"these cases were filed, for the most part, with respect to the issue of equitable tolling for the purposes of the limitations period, and for now our preference is to just leave them as they are." The court asked if any of the cases had "tried to fit themselves into a Short Form?" Defense counsel responded that "there are Short Forms that have been filed on behalf of the individual[]named plaintiffs in every case except the Rodriguez case," and that "[i]n all of the other cases," a group that included Berzas, "Short Form Complaints have been filed, but the class action allegations were not imported into the Short Form Complaints."

Over the course of nearly five years, the Berzas plaintiffs took no action to move their claims forward, even as the entire MDL proceeding was assigned to a different district court judge. In 2016, the GranuFlo MDL parties reported to the district court that they had reached a private global settlement in principle that could resolve the "vast majority" of GranuFlo individual claims. After the deadline to opt in to the settlement fund had passed, the district court granted Fresenius's assented-to motion to sever the claims of all remaining plaintiffs in the Berzas action. The Berzas action was finally closed on April 30, 2019.

**B.**

MSP initiated the present case on September 6, 2018.[2] MSP had been assigned "the right to recover payments" for "financial injury" suffered by "Medicare Payers, first-tier, downstream, and related entities, as well as Medicaid payers such as Accountable Care Organizations and other payers" when "they paid for, or otherwise provided medical care, to their Enrollees for injuries sustained as a result of having been administered the defective GranuFlo products during hemodialysis." MSP asserted claims for negligence, product liability, and design defect, among others, under the laws of Massachusetts, New York, and Connecticut.

All parties agree that the limitations clock on MSP's claims started ticking on March 29, 2012, the day Fresenius sent a letter alerting medical providers to the issues with GranuFlo. They also agree that MSP's claims are subject to either three- or four-year statutes of limitations. In the normal course, therefore, MSP's September 2018 complaint would have garnered a dismissal as time-barred.

MSP seeks to avoid this fate by pointing out that at least some of its assignors were members of the putative class on behalf of which the Berzas plaintiffs alleged an intent to

---

[2] While the suit was first brought in Florida state court, it was subsequently removed to federal court and consolidated with the GranuFlo MDL in the District of Massachusetts.

litigate. That statement of an intent to seek class certification, reasons MSP, tolled the running of any limitations periods under the rule of American Pipe, 414 U.S. at 553-54, and Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 350 (1983).

As stated above, the district court denied MSP's bid for American Pipe tolling and granted defendants' motion to dismiss. See MSP Recovery Claims Series LLC v. Fresenius Med. Care Holdings, Inc. (In re Fresenius GranuFlo/Nautralyte Dialysate Prods. Liab. Litig.), 690 F. Supp. 3d 1 (D. Mass. 2023).[3] In so ruling, the court relied on two independent grounds. First, it concluded that MSP and its assignors were not members of the putative Berzas class because the court construed MSP's complaint as not advancing claims related to "payments for Naturalyte or GranuFlo itself," which was the subject of the Berzas action. Id. at 4-5. Second, the court independently held that MSP had waited too long to file its complaint after the named Berzas plaintiffs abandoned their class allegations in 2014. Id. at 5. As we will explain, we find the district court's second basis for dismissing the case correct, so we limit our review to that basis.

## II.

We assume for purposes of this appeal that we review de novo the district court's decision denying MSP's bid for American

---

[3] We reproduce the case name as indicated in the reporter.

Pipe tolling.  See Rife v. One West Bank, F.S.B., 873 F.3d 17, 19 (1st Cir. 2017) (per curiam) ("We review de novo the district court's dismissal of a complaint for failure to state a claim based on statute of limitations grounds." (quoting Santana-Castro v. Toledo-Dávila, 579 F.3d 109, 113 (1st Cir. 2009))).

### A.

As a threshold matter, it is not clear that American Pipe tolling has any role to play in this lawsuit, which involves claims arising purely under state law.  See Wilkins v. Genzyme Corp., 93 F.4th 33, 44 (1st Cir. 2024).  As we have previously stated, in such a case "we must look to . . . [state] law . . . to determine whether" American Pipe tolling applies.  Id.  Fresenius suggests that it is therefore "questionable" whether American Pipe tolling is even "available for all [plaintiffs'] claims in the first place."  Nevertheless, Fresenius does not pursue this issue as possible grounds for affirmance, perhaps because a proper choice-of-law analysis would conclude that tolling under at least some applicable state law would track American Pipe tolling under federal law.  Nor have plaintiffs sought haven in any state's treatment of American Pipe tolling.  Following the parties' lead, we therefore do not pursue this choice-of-law issue.

### B.

In American Pipe, the Supreme Court held that "the commencement of a class action suspends the applicable statute of

- 9 -

limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S. at 554. It reasoned that "[a] federal class action is . . . a truly representative suit designed to avoid, rather than encourage, unnecessary filing of repetitious papers and motions." Id. at 550. The Court emphasized that "[t]o hold to the contrary would frustrate the principal function of a class suit, because then the sole means by which members of the class could assure their participation in the judgment . . . would be to file earlier individual motions to join or intervene as parties -- precisely the multiplicity of activity which [Federal Rule of Civil Procedure] 23 was designed to avoid." Id. at 551.

A putative class action tolls the limitations clock only for the pendency of the "class" portion of the suit. See Collins v. Vill. of Palatine, 875 F.3d 839, 840-41 (7th Cir. 2017) (observing that "[American Pipe] tolling continues until the case is 'stripped of its character as a class action'" (quoting United Airlines, Inc. v. McDonald, 432 U.S. 385, 393 (1977))). So, for example, "when a district judge denies class certification, dismisses the case for lack of subject-matter jurisdiction without deciding the class-certification question, or otherwise dismisses the case without prejudice," then American Pipe tolling ends, even if the underlying case remains alive in some form. Id. at 840-41; see also Bridges v. Dep't of Md. State Police, 441 F.3d 197,

211 (4th Cir. 2006) (finding that the denial of class certification "only for administrative purposes," where the court left open the possibility that plaintiffs could resurrect the class action by "requesting the court to consider the certification motion," nonetheless ended any tolling under American Pipe).

MSP argues that the Berzas suit tolled the relevant statutes of limitations from when Berzas was first brought in 2013 until it was finally dismissed in April of 2019. This tolling, MSP contends, provided enough cover for MSP's 2018 complaint. Fresenius responds that while the Berzas action was not actually dismissed until 2019, it lost its class character much earlier, in March or June of 2014, when five Berzas plaintiffs filed Short Form Complaints and the remaining plaintiffs filed a stipulation of dismissal. Therefore, reasons Fresenius, with the limitations clock that was allegedly tolled in 2013 running again by no later than June of 2014, MSP's complaint in September of 2018 came too late to assert claims that arose in 2012.[4]

---

[4] Fresenius does not argue that the fact that MSP filed its complaint before the district court disposed of the Berzas action precludes it from taking shelter under American Pipe. See Glater v. Eli Lilly & Co., 712 F.2d 735, 739 (1st Cir. 1983) (finding that "[t]he policies behind Rule 23 and American Pipe would not be served" by allowing a putative class member to "maintain a separate action while class certification is still pending"). But see In re WorldCom Sec. Litig., 496 F.3d 245, 256 (2d Cir. 2007) (finding that where plaintiffs "were members of a class asserted in a class action complaint, their limitations period was tolled under the doctrine of American Pipe until such time as they ceased to be

We agree with Fresenius that, on the face of the pleadings, it does seem that the Berzas suit ceased to be a class action by June 27, 2014, when all named plaintiffs in the case had either filed Short Form Complaints and adopted the Master Complaint asserting claims only as individual parties, or filed stipulations of dismissal. As the Supreme Court has explained, in multidistrict litigation, "[p]arties may elect to file a 'master complaint' and a corresponding 'consolidated answer,'" which "the transferee court may treat . . . as merging the discrete actions for the duration of the MDL pretrial proceedings." Gelboim v. Bank of Am. Corp., 574 U.S. 405, 413 n.3 (2015). Any such master complaint "supersede[s] prior individual pleadings." Id. This rule is in keeping with the general principle that "[a]n amended complaint, once filed, normally supersedes the antecedent complaint." Connectu LLC v. Zuckerberg, 522 F.3d 82, 91 (1st Cir. 2008). "Once an amended pleading is interposed, the original pleading no longer performs any function in the case and . . . the original pleading, once superseded, cannot be utilized to cure defects in the amended pleading, unless the relevant portion is specifically incorporated in the new pleading." 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1476 (3d ed. 2024) (footnotes omitted).

---

members of the asserted class, notwithstanding that they also filed individual actions prior to the class certification decision").

By every indication, this is exactly the procedure followed by the district court in the MDL proceeding that included the Berzas action. The February 2014 assented-to case management order directed plaintiffs to file a master complaint "set[ting] forth the claims that individual Plaintiffs . . . may assert against Defendants in th[e] litigation through the adoption of th[e] Master Complaint by such individual Plaintiffs . . . as their own Complaint . . . through the filing of a Short Form Complaint." The named plaintiffs then filed individual Short Form Complaints on behalf of themselves or their next of kin identifying which specific causes of action they were incorporating into their own complaints. And by the terms of the case management order, those new complaints "replace[d]" the original pleadings. Notably, none of these Short Form Complaints included any reference to class claims; each claim was brought only by and on behalf of a named plaintiff, her heir, or her surviving spouse.

MSP argues that the "Short Form Complaint is an administrative device used to adopt and incorporate the Master Complaint into a plaintiff's specific case" which "does not supersede the long form complaint." But the problem for MSP is not merely the Short Form Complaint -- it is that the Master Complaint filed pursuant to the MDL case management order also makes no mention of any putative class claims. And MSP does not,

- 13 -

nor could it, argue that the Master Complaint incorporated the putative class action sub silentio.

All that being said, this is not the view of the Berzas suit to which Fresenius subscribed when describing the case to the district court in 2015. And given the complexity of MDL proceedings, we are reluctant to say that a request for certification was clearly dropped when neither the MDL court nor counsel regarded it as such. All counsel and the then-responsible district court judge took the position that the request for class certification was not entirely abandoned. Rather, all seemed to view it as held in a form of abeyance, not because plaintiffs were actually pursuing class certification, but as a tool for tolling the statute of limitations. We need not decide whether this view is sustainable. Rather, assuming that it is, we proceed to the question addressed by the parties: whether an otherwise-abandoned request for class certification, held in abeyance simply to toll the running of the statutory limitations period for putative class members, in fact had that tolling effect. For the following reasons, it did not.

### C.

The Supreme Court has labeled American Pipe tolling as "a rule based on traditional equitable powers." Cal. Pub. Emps. Ret. Sys. v. ANZ Sec., Inc., 582 U.S. 497, 510 (2017). Similarly, the Supreme Court has described American Pipe as protecting

- 14 -

litigants who "reasonably relied on the class representative, who sued timely, to protect their interests"; plaintiffs "who had not slept on their rights"; and "diligent" plaintiffs. China Agritech v. Resh, 584 U.S. 732, 743 (2018). But the rule has not relied on any analysis or application of the "criteria of the formal doctrine of equitable tolling in any direct manner." ANZ, 582 U.S. at 510. Presumably for that reason, the Court has never held that individual plaintiffs must even have been aware of the class action in order to benefit from American Pipe tolling. See Am. Pipe, 414 U.S. at 551 ("We think no different a standard should apply to those members of the class who . . . were even unaware that [the class action] existed . . . .").[5]

Instead, the Court has presumed that would-be class members are aware of what is transpiring in the putative class proceeding, and it has trained its attention on the incentives for proper and efficient administration of class actions. In so doing, the Court has analyzed the effects of tolling on the efficacy of resulting litigation and the purposes sought by Rule 23. Thus, "[t]he [American Pipe] Court reasoned that unless the filing of a class action tolled the statute of limitations, potential class members would be induced to file motions to intervene or to join in order to protect themselves." Crown, Cork & Seal, 462 U.S. at

---

[5] Accordingly, we have no need to consider MSP and its assignors' diligence or lack thereof.

349; see Am. Pipe, 414 U.S. at 553. Similarly, in Crown, Cork & Seal, the Court was concerned that if American Pipe did not extend to class members who planned to file individual suits rather than intervene, "[t]he result would be a needless multiplicity of actions." 462 U.S. at 350-51. And in China Agritech, the Court rejected the application of American Pipe to litigants seeking to file additional class actions, reasoning that "the time for filing successive class suits, if tolling were allowed, could be limitless." 584 U.S. at 744; see also Basch v. Ground Round, Inc., 139 F.3d 6, 11 (1st Cir. 1998)(reasoning that "[t]he policies -- respect for Rule 23 and considerations of judicial economy -- which animated the Crown, Cork and American Pipe tolling rules dictate that the tolling rules . . . not permit plaintiffs to stretch out limitations periods by bringing successive class actions").

So we ask here: How would we have wanted individuals with yet-to-be-filed claims against Fresenius to have behaved, had they been familiar with the travel of the Berzas action? The answer to that question seems clear. We would want them to have concluded that any tolling likely ended by June of 2014, when the pleadings with class allegations had either been replaced by Short Form Complaints or dismissed as to the remaining Berzas plaintiffs. And we would want them to have concluded that tolling certainly ceased in April of 2015, when counsel disavowed any intent to seek

class certification except as a tool to toll indefinitely the running of the limitations period. To allow such a gambit to substitute for pleading and actively pursuing a class action would run contrary to the aims of American Pipe, the "watchwords" of which are "efficiency and economy of litigation." China Agritech, 584 U.S. at 748. Neither efficiency nor economy is furthered by holding a request for certification on inactive life support simply to delay indefinitely the need to bring forward individual claims. The ruling MSP seeks would also contravene the design of Rule 23, which requires courts to determine whether to certify a class "[a]t an early practicable time after a person sues or is sued as a class representative." Fed. R. Civ. P. 23(c)(1)(A). As the Fourth Circuit has cautioned, "[t]o avoid abuse and perpetual tolling, the American Pipe tolling rule must depend on district courts' fulfilling their obligations under Rule 23" to promptly determine class certification. Bridges, 441 F.3d at 212.

Ultimately, MSP bears the burden of establishing its entitlement to tolling under the doctrine of American Pipe. See Martin v. Somerset Cnty., 86 F.4th 938, 945 (1st Cir. 2023). The evidence MSP presents to demonstrate that Berzas remained a class action even after the filing of the Master Complaint shows, at best, that there was no longer any intention to actually move for class certification. As such, MSP's bid for continued American

Pipe tolling beyond April of 2015 fails, and its complaint remains untimely.

## III.

We therefore affirm the judgment of the district court.