JAMES W. HOERGER et al., on Behalf of Themselves and All Others Similarly Situated, Respondents, v BOARD OF EDUCATION OF THE GREAT NECK UNION FREE SCHOOL DISTRICT et al., Appellants.

Second Department, December 30, 1983

APPEARANCES OF COUNSEL

*James R. Sandner* (*Jacob S. Feldman* of counsel), for Great Neck Teachers Association, Inc., appellant.

*Ginsberg, Ehrlich & Reich* (*Steven R. Schlesinger* of counsel), for Board of Education of the Great Neck Union Free School District, appellant.

*Auerback, Labes & Woicik* (*Henry C. Woicik* of counsel), for respondents.

OPINION OF THE COURT

*Per Curiam.*

The question presented on these appeals is whether Special Term properly granted plaintiffs' motion for class action certification with respect to all their claims against defendant Board of Education of the Great Neck Union Free School District and defendant Great Neck Teachers Association, Inc. We conclude that the motion should have been granted only as to plaintiffs' cause of action for breach of contract against defendant Great Neck Teachers Association, Inc., and otherwise denied.

Named plaintiffs James W. Hoerger and Edith Hyman are former employees of defendant Board of Education of the Great Neck Union Free School District (Board) and were members of the collective bargaining unit represented by defendant Great Neck Teachers Association, Inc. (Union), in its dealings with defendant Board. Hoerger, Hyman and 42 other teachers retired from the school system at the end of the 1981 school year, pursuant to a retirement incentive plan (Plan), jointly developed by the defendants. The Plan, which superseded the defendants' collective bargaining agreement, provided, *inter alia,* that each employee who was at least 45 years of age, had 15 years of creditable teaching experience, and submitted a letter of resignation by April 15, 1981, to be effective June 30, 1981, would receive a lump-sum payment, depending upon the number of participants in the Plan, which amount would be considered in the calculation of each retiree's pension benefits. After June 30, 1981, employees

would receive a retirement bonus of $3,000 if they retired by the end of the school year in which they were at least 55 years of age and had at least 20 years of credited teaching service. Since 44 teachers submitted their resignations prior to April 15, 1981, the lump-sum benefit to be paid was $13,500 per individual, the Plan's maximum amount.

After the date by which the resignations had to be submitted, but before they became effective, plaintiffs learned that in addition to the 44 employees who were to retire under the Plan, three other employees would also retire effective June 30, 1981. However, these three employees had, with the assistance of defendant Union, separately negotiated the terms of their retirements with defendant Board, and each was to receive a retirement incentive benefit significantly higher than that provided by the Plan — $20,000, $26,000 and $35,000.

On or about August 1, 1981, Hoerger filed, *pro se,* an individual notice of claim against defendant Board, pursuant to section 3813 of the Education Law. Hoerger claimed "[b]reach of contract, misrepresentation and improper bargaining practices" and asserted damages of $100,000. In addition, both Hoerger and Hyman filed individual grievances against defendant Board, on or about August 18, 1981 and October 1, 1981, respectively, with respect to the payments made to retiring teachers. Defendant Board took the position that, *inter alia,* since both Hoerger and Hyman had retired prior to the filing of their grievances, they had no standing to proceed under the grievance procedure of the collective bargaining agreement.

Thereafter, in or about January of 1982, the instant action was commenced against defendants by Hoerger and Hyman, who purported to represent themselves and "all other members of the bargaining unit who retired under [the] Retirement Incentive Plan".

The complaint contained essentially two causes of action. First, plaintiffs charged that defendants had breached the collective bargaining agreement by separately negotiating the retirements of three teachers after having presented a specific retirement incentive plan purportedly for all teachers, and accepting plaintiffs' resignations in accor-

dance therewith; and that defendant Union, by participating in said negotiations, breached its duty to represent fairly the interests of all members of the bargaining unit. Second, plaintiffs contended that the defendants had fraudulently induced plaintiffs to retire under the Plan, by representing to them that the Plan was exclusive and the plaintiffs could not bargain individually for a greater retirement incentive than that which the Plan provided. The complaint further recited that a notice of claim had been filed; however, it is clear from the record, and plaintiffs do not contest it, that the only notice of claim ever filed in this action was an individual one on behalf of Hoerger. In its answer, among other affirmative defenses, defendant Board raised the failure of any other class member individually, or anyone on behalf of the class, to have filed a notice of claim in compliance with section 3813 of the Education Law.

Plaintiffs subsequently moved, pursuant to CPLR 902, for a determination that their action be maintained as a class action. They argued, rather summarily, that the class action prerequisites of CPLR 901 (subd a) had been met in that common issues of fact and law predominated over questions pertaining to individual members, that the claims of the named plaintiffs were typical and that they could adequately represent the class, and that the number of class members — 44 — made joinder impracticable and class action the best method of adjudicating the controversy.

Special Term granted plaintiffs' request for class action certification. However, we find, this was error to the extent indicated herein.

A party seeking class action certification has the burden of establishing the existence of the following five prerequisites (CPLR 901, subd a):

"1. the class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

"2. there are questions of law or fact common to the class which predominate over any questions affecting only individual members;

"3. the claims or defenses of the representative parties are typical of the claims or defenses of the class;

"4. the representative parties will fairly and adequately protect the interests of the class; and

"5. a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Additionally, CPLR 902 lists certain considerations that the court is to take into account in determining if an action may proceed as a class action:

"1. The interest of members of the class in individually controlling the prosecution or defense of separate actions;

"2. The impracticability or inefficiency of prosecuting or defending separate actions;

"3. The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

"4. The desirability or undesirability of concentrating the litigation of the claim in the particular forum; [and]

"5. The difficulties likely to be encountered in the management of a class action."

The list of factors in CPLR 902 is not intended to be exhaustive. For example, the court may also consider the merits of the action to the extent necessary for the elimination, as early as possible, of spurious actions (see, e.g., *Yollin v Holland Amer. Cruises,* 97 AD2d 720; *Seligman v Guardian Life Ins. Co.,* 59 AD2d 859, mot for lv to app dsmd 44 NY2d 838; *Bloom v Cunard Line,* 76 AD2d 237, 240; cf. *Simon v Cunard Line,* 75 AD2d 283, 288).

On its appeal, defendant Board argues that class action certification was improperly granted as against it on all the causes of action because no former employee other than Hoerger had filed a notice of claim.

Subdivisions 1 and 2 of section 3813 of the Education Law read, in relevant part, as follows:

"1. No action or special proceeding, for any cause whatever * * * relating to district property or property of schools * * * or claim against the district or any such school, or involving the rights or interest of any district or any such school shall be prosecuted or maintained against any school district, [or] board of education * * * unless it shall appear by and as an allegation in the complaint * * * that a

written verified claim upon which such action or special proceeding is founded was presented to the governing body of said district or school within three months after the accrual of such claim, and that the officer or body having the power to adjust or pay said claim has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment.

"2. Notwithstanding anything to the contrary hereinbefore contained in this section, no action or special proceeding founded upon tort shall be prosecuted or maintained against any of the parties named in this section * * * unless a notice of claim shall have been made and served in compliance with section fifty-e of the general municipal law."

Although not strictly speaking a defense on the merits, defendant Board alleges that since none of the members of the purported class herein, other than Hoerger, had filed a notice of claim, dismissal of the action against it (except as to Hoerger) is required, as such notices are absolute prerequisites to private actions for damages (see *Board of Educ. v New York State Div. of Human Rights* [*Arluck*], 44 NY2d 902, mot for rearg or reconsideration den 45 NY2d 838; *Flanagan v Board of Educ.*, 47 NY2d 613, 617; *Leith Constr. Co. v Board of Educ.*, 75 AD2d 615). Plaintiffs themselves do not deny defendant Board's allegation of the failure to file, but appear to rely upon the sole notice of claim filed by Hoerger.*

In its decision granting class-action status, Special Term acknowledged that, at some later date, "proof of plaintiffs' failure to comply with [section 3813 of the Education Law] may ultimately warrant a motion to decertify the class and to dismiss the claims." However, the court determined

---

* Plaintiffs also contend that no notice of claim was required to be filed on behalf of the putative class members, pursuant to section 3813 of the Education Law, as Hyman's written grievance had been filed on behalf of all such class members. Without expressing any opinion with regard to whether a notice of claim was required to be filed in light of the grievance procedures set forth in defendants' collective bargaining agreement (cf. *Matter of Geneseo Cent. School* [*Perfetto & Whalen Constr. Corp.*], 53 NY2d 306, 311; *Matter of Guilderland Cent. School Dist.* [*Guilderland Cent. Teachers Assn.*], 45 AD2d 85, 86 [COOKE, J.]), we note that Hyman's written grievance was not sufficient to constitute notice to defendant Board of a claim on behalf of the other 43 teachers. Thus, while our analysis in this case concerns compliance with section 3813 of the Education Law, this analysis would be equally applicable to the 42 unnamed members of the putative class who neither filed a grievance nor a notice of claim.

that, as notice was alleged in the complaint, the "adequacy of such notice is not an issue properly raised upon plaintiffs' motion for class certification." We disagree. It is not the "adequacy" of the notice that defendant Board challenges, but whether the required notices were filed at all. If they were not, those plaintiffs would not be able to recover on a cause of action for damages, and their claims would be subject to dismissal (see *Florence Dev. Corp. v Board of Educ.*, 81 AD2d 855). Judicial economy would be best served by making this determination as early as possible, and it is clear that on this record a determination must be made adverse to plaintiffs.

It is true, as Special Term noted, that plaintiffs' complaint alleged that a notice of claim had been filed. It is equally clear from the record that this allegation refers solely to Hoerger's *pro se* notice and that no other notice has at any time been filed. Moreover, Hoerger's notice patently was not filed on behalf of anyone other than himself. Nor do plaintiffs allege that the hearing held on his notice considered anything other than Hoerger's personal claim. Accordingly, we find that potential class members cannot now rely upon Hoerger's notice of claim to avoid the consequences of the statute. Contrary to plaintiffs' position this case is not similar to *Gisondi v Town of Harrison* (16 AD2d 929), wherein the plaintiff was permitted to make technical amendments to an otherwise timely and proper notice of claim. Rather, it more closely resembles *Gordon v City of New York* (79 AD2d 981), wherein the plaintiff was not permitted to correct his notice of claim by adding thereto a new theory of liability not previously interposed, since such a change was viewed as substantive rather than merely technical in nature. Here, too, the change would be substantive, as defendant Board, previously aware of one claim against it for $100,000, would now be confronted with 43 additional claims, possibly in similar amounts. Beyond that, we are not presented herein with a proposed change or correction in a filed notice of claim but rather with a situation wherein the 43 other members of the proposed class did not file a notice of claim at all. Thus, they failed to meet the statutory requirement set forth in section 3813 of the

Education Law, and their causes of action against defendant Board are barred.

In addition, we note that the instant action is distinguishable from *Crown, Cork & Seal Co. v Parker* (462 US __, 103 S Ct 2392) and *American Pipe & Constr. Co. v Utah* (414 US 538, reh den 415 US 952). In both cases, the United States Supreme Court held, in effect, that the timely commencement of an action *on behalf of all members of the putative class,* who would have been parties to such class action, pursuant to rule 23 of the Federal Rules of Civil Procedure (in US Code, tit 28, Appendix), the model for our CPLR article 9, tolled the running of the Statute of Limitations as to putative class members who might subsequently choose to participate in the action. However, in the instant action, while notices of claims were required to be filed on behalf of all claimants, Hoerger filed a claim *only on behalf of himself.* Therefore, the other 43 members of the class (absent a clarification as to Hyman's status, based upon her filing of a grievance on her own behalf [see n, *supra*]) could not participate in the action since their failure to file notices of claim would effectively bar their requests for any relief (see Education Law, § 3813, subds 1, 2, prior to the 1981 amdt adding subd 2-a, eff July, 1981 [L 1981, ch 855, § 1]; cf. *Eisner v City of New York,* 118 Misc 2d 672, 674-675).

Accordingly, plaintiffs' motion, insofar as it requested class action certification with respect to all causes of action against defendant Board, should have been denied.

■■ While the failure to file notices of claim prevents certification of a class action against defendant Board, there is no such condition precedent to the commencement of a lawsuit against defendant Union. We find, however, that class action certification is warranted only with respect to the cause of action for breach of contract against defendant Union, as plaintiffs have failed to satisfy the prerequisites of CPLR 901 (subd a, pars 1-5) so as to entitle them to certification on the fraud cause of action.

· ■ A class action based upon fraud may properly be maintained (see, e.g., *King v Club Med,* 76 AD2d 123, app withdrawn 57 NY2d 777). However, the party seeking

class action certification must still show that all the prerequisites set forth in CPLR 901 (subd a, pars 1-5) have been met.

It is plaintiffs' contention that they and the other purported class members were induced to retire in June of 1981 solely because of certain fraudulent representations made by defendant Union with respect to their retirement benefits, specifically that all members of the collective bargaining unit would be bound by the terms of the Plan, and that the members of the purported class could not bargain individually for enhanced retirement benefits. These allegations of reliance are general, conclusory and unsupported by affidavit and therefore cannot be considered sufficient to establish the prerequisites of CPLR 901 (subd a, par 2) (see, e.g., *Jennings v Domestic Fin. Corp.,* 55 AD2d 832, 833). Additionally, in her examination before trial, Hyman admitted that she knew of only six other persons who would not have retired, except for the Plan, that several other persons had intended to retire in June of 1981, regardless of any actions by defendants, and that as to the majority of purported class members, she had no knowledge whatsoever of the reasons for their retirements. The trial court would unavoidably be placed in the position of examining each of these 44 individual cases to determine the extent to which the individual relied — if at all — upon the alleged representations of defendant Union. Therefore, under the circumstances, it cannot be said that common questions predominate, nor can it be said that a class action is superior to other available methods of resolving the issue (CPLR 901, subd a, pars 2, 5; see, e.g., *Norwalk v Manufacturers & Traders Trust Co.,* 80 AD2d 745; *Strauss v Long Is. Sports,* 60 AD2d 501; cf. *Evans v City of Johnstown,* 97 AD2d 1). In light of plaintiffs' failure to establish the afore-mentioned prerequisites, class action certification of the fraud cause of action against defendant Union must be denied.

However, Special Term's determination that a class action could be maintained was proper with respect to the issue of defendant Union's alleged breach of contract.

It is plaintiffs' contention that defendant Union breached the collective bargaining agreement to their in-

jury by negotiating and obtaining for three other members of the collective bargaining unit substantially larger retirement benefits than it had negotiated for plaintiffs, members of the same unit, who were entitled to equal representation. If plaintiffs and the purported class have been injured, they have been so injured at the same time, in the same way and by the same action of defendant Union. The paramount issue is defendant Union's liability, if any, for separately negotiating the other retirements, if, in fact, it did so. Individual reasons for retirement are simply not relevant to this issue. Therefore, common issues of law and fact predominate over individual questions on this cause of action against this defendant (see *Friar v Vanguard Holding Corp.,* 78 AD2d 83, 97-98). Further, a class action to determine the issue of defendant Union's liability in each of these instances is clearly superior to 44 separate actions, and to the joinder of 44 individuals who would separately present the same facts and the same injuries. In addition, the claims of the named plaintiffs are typical. They are, in fact, exactly the same as the claims of any other purported class member and it appears from the record that plaintiffs can adequately represent the class. Since all the prerequisites of CPLR 901 have been met, class action certification was properly granted to plaintiffs on their cause of action for breach of contract against defendant Union (CPLR 906, subd 1).

Accordingly, the order insofar as it granted class action certification should be modified to the extent indicated, and otherwise affirmed insofar as appealed from.

MOLLEN, P. J., DAMIANI, MANGANO and GULOTTA, JJ., concur.

Order of the Supreme Court, Nassau County, entered January 11, 1983, modified, on the law and the facts, by granting plaintiffs' motion for class action certification only as to their cause of action for breach of contract against the defendant Great Neck Teachers Association, Inc., and the motion is otherwise denied. As so modified, order affirmed insofar as appealed from, without costs or disbursements.