# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision
before publication in the New York Reports.

No. 39
Tobias Bermudez Chavez, et al.,
    Respondents,
      v.
Occidental Chemical Corporation, &c.,
    Appellant.

Kenneth A. Manning, for appellant.
Jonathan S. Massey, for respondents.
Product Liability Advisory Council, Inc., Whirlpool Corporation and Chamber of
Commerce of the United States of America, amici curiae.

STEIN, J.:

The United States Court of Appeals for the Second Circuit has asked us whether

New York recognizes so-called *American Pipe* (*American Pipe and Constr. Co. v Utah*,

414 US 538 [1974]) tolling of the statute of limitations for absent class members of a

putative class action filed in another jurisdiction. In addition, we have been asked whether

- 1 -

"a non-merits dismissal of class certification" can terminate such cross-jurisdictional tolling and, relatedly, whether tolling was ended here by certain orders of the United States District Court for the Southern District of Texas dismissing, on forum non conveniens grounds, a putative class action advancing the same claims as those advanced in the instant action (*Chavez v Occidental Chem. Corp.*, 933 F3d 186, 202 [2d Cir 2019]). We answer these questions in the affirmative.

I.

In 2012, plaintiffs filed individual lawsuits in the United States District Court for the District of Delaware, alleging injuries based upon the manufacturing of a nematicide called dibromochloropane (DBCP) by defendant Occidental Chemical Corporation. Plaintiffs claimed that Occidental continued distributing the chemical to banana plantations in certain Latin American countries after 1977, at which point it was well-known that exposure to DBCP potentially causes sterility, cancer, and sexual and reproductive abnormalities. As relevant here, the cases were consolidated and, in 2017, the action was transferred to the United States District Court for the Southern District of New York. Occidental moved for judgment on the pleadings,[1] arguing that plaintiffs' claims were time-barred under New York law (*see Chavez*, 933 F3d at 195; *see also Chavez v*

---

[1] Rule 12 (c) of the Federal Rules of Civil Procedure provides that, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings" (*see also Chavez v Occidental Chem. Corp.*, 933 F3d 186, 195 [2d Cir 2019]). A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Federal Rules of Civil Procedure rule 12 (b) (6) and, in certifying these questions to us, the Second Circuit "accept[ed] all factual allegations in the complaint as true and dr[ew] all reasonable inferences in [the plaintiffs'] favor" (*Chavez*, 933 F3d at 195).

*Occidental Chem. Corp.*, 300 F Supp 3d 517, 522 [SD NY 2018]).  In response, plaintiffs contended that a putative class action originally filed in Texas state court in 1993 had tolled the applicable three-year statute of limitations (*see* CPLR 214 [5]) and, therefore, their claims were timely.[2]  Because the Texas litigation is intertwined with the parties' arguments regarding the proper answer to these certified questions, a recitation of the pertinent history related to that litigation follows.

In 1993, a group of plaintiffs—other than those before us here—from several countries, including Costa Rica, Ecuador, and Panama (hereinafter, the 1993 plaintiffs), brought a putative class action in Texas state court, alleging identical claims to those advanced here.  The 1993 plaintiffs moved for class certification under the Texas rules of civil procedure.  Occidental, among other defendants, impleaded two subsidiaries to a parent company owned by the State of Israel.  Before the court resolved the motion for class certification, Occidental successfully removed the action to the United States District Court for the Southern District of Texas under the theory that, in light of the impleaded subsidiaries, the Foreign Sovereign Immunities Act of 1979 (FSIA) authorized such removal.[3]  Soon thereafter, the District Court requested that the parties update the court on

---

[2] According to the District Court, Southern District of New York, the parties generally "agree[d] that each claim here is subject to a three-year limitations period under New York law" (*Chavez v Occidental Chem. Corp.*, 300 F Supp 3d 517, 528 [SD NY 2018]).

[3] FSIA establishes the jurisdictional framework applicable to civil cases in which a foreign sovereign nation is a party to the action (*see* Pub L 94-583, 90 Stat 2891 [94th Cong, 2d Sess, Oct. 21, 1976]).  As relevant here, if an action is brought in state court and a party is a foreign sovereign nation or instrumentality thereof, such nation or instrumentality may remove the action to federal court, even if the claims sound only in state law (*see* 28 USC §§ 1441 [d], 1603 [a]).

the issue of class certification raised in the state court.  However, before the issue of class certification was addressed, Occidental moved to dismiss the action based on forum non conveniens, arguing that the claims should be heard in each plaintiff's home country.  In response, the 1993 plaintiffs argued that the courts in their home countries could not resolve their claims because, among other things, those courts would lack personal jurisdiction over Occidental.

In July 1995, the District Court conditionally granted Occidental's motion to dismiss for forum non conveniens, reasoning that the 1993 plaintiffs' home countries offered adequate fora, and providing that if certain housekeeping measures were satisfied, the court would dismiss the action 90 days after its order (*see Delgado v Shell Oil Co.*, 890 F Supp 1324, 1373 [SD Tex 1995]).  The same order also included a return jurisdiction clause, which stated that the 1993 plaintiffs could test the jurisdiction of their home countries and, in the event of a dismissal for lack of jurisdiction, "plaintiff[s] may return to [the federal district] court and, upon proper motion, the court will resume jurisdiction over the action as if the case had never been dismissed for [forum non conveniens]" (*id.* at 1375). In addition, the court enjoined the named 1993 plaintiffs, along with any absent class members who had participated in the litigation or received actual notice of the order, from commencing or intervening in any new case arising from the same underlying facts (*see id.* at 1373-1375).  Finally, the District Court determined that, "[b]ecause [the putative class action] may be dismissed in 90 days, all pending motions . . . not otherwise expressly

addressed in this Memorandum and Order are DENIED as MOOT" (*id.* at 1375).[4] The 1993 plaintiffs subsequently expressed concern that the District Court's July 1995 order regarding the injunction was overbroad. The court qualified the scope of its injunction in a later order, stating that it "did not intend such a broad reading of its orders. . . . The court did not enjoin any potential plaintiff not before it from filing a DBCP-related claim in a court in the United States and did not enjoin counsel for the plaintiffs and intervenor plaintiffs from representing any person, not a party in the actions pending before the court, in a DBCP-related claim in a court in the United States."

In October 1995, after defendants satisfied the conditions of the July 1995 order,[5] the District Court entered a "Final Judgment" dismissing the action and permanently enjoining the 1993 plaintiffs from commencing or joining any DBCP-related litigation. The United States Court of Appeals for the Fifth Circuit ultimately affirmed (*see Rodriguez Delgado v Shell Oil Co.,* 231 F3d 165 [5th Cir 2000], *cert denied* 532 US 972 [2001]). Nevertheless, plaintiffs contend that, due to the return jurisdiction clause, the case remained pending on the District Court's docket in the Southern District of Texas.

Thereafter, certain 1993 plaintiffs sought relief in the courts of Costa Rica, but Costa Rica's Supreme Court swiftly determined that its courts lacked personal jurisdiction over Occidental. In April 1996, a subset of the Costa Rican plaintiffs returned to federal court,

---

[4] The parties dispute whether the denial of the remaining motions as moot included plaintiffs' motion for class certification.

[5] Those conditions have no relevance to the issues before us here (*see Delgado*, 890 F Supp. at 1373-1375).

seeking reinstatement of their action in the Southern District of Texas, pursuant to the return jurisdiction clause (*Rodriguez Delgado*, 322 F Supp 2d at 802). Because, at that time, the appeal of the District Court's October 1995 final judgment was still unresolved at the Fifth Circuit, the District Court denied the motion to reinstate, without prejudice, pending resolution of the appeal. After the Fifth Circuit affirmed the October 1995 final judgment in 2000, the remaining plaintiffs informed the District Court of their intention to petition the United States Supreme Court for certiorari, and suggested that the court defer ruling on the motion for reinstatement until the Supreme Court disposed of that petition.

Meanwhile, a related DBCP class action, originally filed in Hawai'i state court, was making its way through the federal courts. The Hawaiian action had a similar procedural posture as the Texas litigation insofar as the defendant there had impleaded the same two foreign companies as in the Texas lawsuit, and then sought removal of the action to federal court pursuant to FSIA (*see Dole Food Co. v Patrickson*, 538 US 468, 471 [2003]). In 2003, the United States Supreme Court held, as relevant here, that in order for a company to be considered a foreign instrumentality, thereby providing a basis for removal to federal court under FSIA, a majority of the company's shares must be held by a foreign state at the time of the filing of the complaint (*see id.* at 480). Because Israel did not own a majority of shares in the subsidiaries at issue, the Court concluded that those subsidiaries were not foreign instrumentalities and the defendant could not invoke FSIA for purposes of removal despite the undisputed ownership of the parent company by a foreign state (*see id.* at 477-478).

In 2003, the remaining 1993 plaintiffs who had not settled their claims, along with intervenors, moved in the Southern District of Texas to vacate that court's previous order of dismissal, in light of *Patrickson*, arguing that the removal of the lawsuit to federal court under FSIA had been erroneous. The District Court vacated its previous injunction preventing the named plaintiffs from bringing or intervening in any DBCP-related litigation, but denied the request to vacate its forum non conveniens dismissal. In June 2004, the District Court granted the plaintiff-intervenors' motion to remand the action to state court (*Rodriguez Delgado v Shell Oil Co.*, 322 F Supp 2d 798, 813, 817 [SD Tex 2004]). The court reasoned that the return jurisdiction clause authorized the plaintiffs to *seek* reinstatement and deemed the motion to reinstate to be a "direct continuation of the prior proceedings over which the court expressly stated its intent to retain jurisdiction"; however, because it lacked subject-matter jurisdiction to decide the motion to reinstate under *Patrickson*, the court remanded the cases, along with the motion to reinstate, to "the only courts to which those claims can be returned, i.e., the state courts of Texas" (*id.* at 811, 815-817).[6]

In 2006, the Texas state court granted the motion to reinstate and allowed the plaintiffs and intervenors to file an eighth amended complaint, styled as a putative class action. On June 3, 2010, after another four years of unrelated motion practice, the Texas

---

[6] In making this determination, the District Court opined that its prior forum non conveniens dismissal was conditional and that its "final judgment" was final only "for the purpose of appealing the court's forum non conveniens decision" (*Rodriguez Delgado*, 322 F Supp 2d at 816).

state court denied the plaintiff-intervenors' motion for class certification and granted their motion to voluntarily dismiss the action.

Thereafter, in 2011, certain absent class members belonging to the Texas action's putative class, including the lead plaintiff here, commenced two parallel actions in federal district courts, one in Louisiana and one—this action—in Delaware.  In 2012, the District Court for the Eastern District of Louisiana dismissed the action commenced there based on Louisiana's statute of limitations.  In Delaware, as noted above, the court transferred the action to the Southern District of New York, wherein Occidental is incorporated, following Occidental's motion to dismiss based on lack of personal jurisdiction.

Occidental then moved in the Southern District of New York for judgment on the pleadings on statute of limitations grounds.  Specifically, Occidental argued that New York does not recognize cross-jurisdictional tolling or, in the alternative, that these plaintiffs' claims were nevertheless untimely because the Texas federal court had denied class certification in 1995 prior to the Texas state court's later 2010 determination.  In January 2018, the New York District Court Judge denied the motion, predicting that this Court would not only recognize cross-jurisdictional tolling, but that we would also agree that the limitations period had been tolled by the *Delgado* action from 1993 to 2010, despite the 1995 non-merits dismissal by the Southern District of Texas.  Recognizing that there is a split in authority in the Southern District of New York regarding whether New York recognizes cross-jurisdictional tolling, the District Court certified an interlocutory appeal to the United States Court of Appeals for the Second Circuit (*see Chavez*, 933 F3d at 195). The Second Circuit, in turn, certified the following questions to this Court:

"1. Does New York law recognize cross-jurisdictional class action tolling, as described in this opinion?

"2. Can a non-merits dismissal of class certification terminate class action tolling, and if so, did the Orders at issue here do so?"

(933 F3d at 202).

We accepted these certified questions (33 NY3d 1110 [2019]), and now answer them in the affirmative.

## II.

We begin our analysis with the holding of the United States Supreme Court, in *American Pipe and Constr. Co. v Utah*, that "the commencement of [a] class suit tolls the running of the statute [of limitations] for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status" (414 US at 553). In reaching this determination, the Supreme Court observed that Federal Rules of Civil Procedure rule 23 had recently been amended to provide that a "federal class action [was] no longer 'an invitation to joinder' but a truly representative suit designed to avoid, rather than encourage, unnecessary filing of repetitious papers and motions" (*id.* at 550). Moreover, the Court explicated,

> "Where . . . the named plaintiffs asserted claims that were 'typical of the claims or defenses of the class' and would 'fairly and adequately protect the interests of the class,' the claimed members of the class stood as parties to the suit until and unless they received notice thereof and chose not to continue. Thus, the commencement of the action satisfied the purpose of the limitation provision as to all those who might subsequently participate in the suit as well as for the named plaintiffs"

(*id.* at 550-551 [internal citation omitted], quoting Fed R Civ P rule 23 [a] [3], [4]).  The Court explained further that, to reject tolling in the federal courts,

> "would frustrate the principal function of a class suit, because then the sole means by which members of the class could assure their participation in the judgment if notice of the class suit did not reach them until after the running of the limitation period would be to file earlier individual motions to join or intervene as parties—precisely the multiplicity of activity which Rule 23 was designed to avoid."

(*id.* at 551, citing Fed R Civ P rule 23 [b] [3]).

Nine years later, the Supreme Court clarified that "[t]he filing of a class action tolls the statute of limitations 'as to all asserted members of the class,' not just as to intervenors" (*Crown, Cork & Seal Co., Inc. v Parker*, 462 US 345, 350 [1983] [internal citation omitted], quoting *American Pipe*, 414 US at 554)—in other words, tolling applies to both those members of the putative class who, following a denial of class certification, wish to intervene and those who prefer to commence individual actions.  The Court emphasized that, if tolling were not available for individuals wishing to bring individual lawsuits, "[t]he result would be a needless multiplicity of actions—precisely the situation that Federal Rule[s] of Civil Procedure [rule] 23 and the tolling rule of *American Pipe* were designed to avoid" (*id.* at 351).  The Court also underscored that *American Pipe* tolling "is not inconsistent with the purposes served by statutes of limitations," noting that "[l]imitations periods are intended to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights" and that "these ends are met when a class action is commenced" (*id.* at 352).  In that regard, the Court explained that, when named plaintiffs commence a putative class action, defendants are made "aware of the need to preserve

evidence and witnesses respecting the claims of all the members of the class" (*id.* at 353).

Therefore, "[t]olling the statute of limitations . . . creates no potential for unfair surprise,

regardless of the method class members choose to enforce their rights upon denial of class

certification" (*id.*). Both *American Pipe* and *Crown, Cork & Seal*, relying on Federal Rules

of Civil Procedure rule 23, allowed tolling of the statute of limitations for federal claims

for the benefit of absent class members filing in a *federal* court following a putative class

action previously filed in another court until the absent class members could no longer

reasonably rely upon the previously filed putative class action to vindicate their rights.[7]

New York's class action mechanism is codified in article 9 of the CPLR (*see* L 1975,

c 207, § 1). This Court has repeatedly stated that "CPLR article 9 was modeled on similar

federal law, specifically, Federal Rules of Civil Procedure rule 23" (*Desrosier v Perry Ellis

Menswear, LLC*, 30 NY3d 488, 495 [2017] [internal quotation marks and citations

omitted]; *see O'Hara v Del Bello*, 47 NY2d 363, 368 [1979]). Like its federal counterpart,

the underlying purpose of article 9 was to "'enable individuals injured by the same pattern

of conduct by another to pool their resources and collectively seek relief' where their

individual damages 'may not be sufficient to justify the costs of litigation'" (*Desrosiers*,

30 NY3d at 494-495, quoting Governor's Approval Mem at 1, Bill Jacket, L 1975, ch 207).

Put differently, article 9 was intended to "preserv[e] the rights of those parties who have

no effective remedy on an individual basis or when actual joinder of the class is

---

[7] In 2018, the Supreme Court qualified its decision in *American Pipe*, clarifying that "*American Pipe* does not permit the maintenance of a follow-on *class action* past expiration of the statute of limitations" (*China Agritech, Inc. v Resh*, ___ US ___, ___, 138 S Ct 1800, 1804 [2018] [emphasis added]).

economically or administratively unfeasible" (Counsel to the Lieutenant Governor Ltr to Counsel of the Governor, June 9, 1975 at 1, Bill Jacket L 1975, ch 207). Moreover, "[i]n permitting common questions of law or fact affecting numerous persons to be litigated in one forum, [article 9] would result in greater conservation of judicial effort" (Governor's Approval Mem at 1, Bill Jacket, L 1975, ch 207).

III.

Turning to the specific questions certified to us by the Second Circuit, we answer the first in the affirmative. We conclude that a determination that tolling is not available cross-jurisdictionally would subvert article 9—the primary function of which is to allow named plaintiffs to bring truly representative lawsuits without necessitating a multiplicity of litigation that squanders resources and undermines judicial economy, while still ensuring that defendants receive fair notice of the specific claims advanced against them. CPLR article 9 is closely related to and modeled on Federal Rules of Civil Procedure rule 23 (*see Desrosiers*, 30 NY3d at 495), and the same animating policies the United States Supreme Court discussed in *American Pipe* and its progeny also underlie article 9. Both rule 23 and article 9 were intended to permit the named plaintiffs in a putative class action to act as placeholders, fully representing absent class members who have the same claims. Additionally, rule 23 and article 9 were designed to avoid wasteful and duplicative litigation by eliminating the need—during the pendency of the class action—for putative class members to initiate individual claims to protect their rights, while simultaneously providing notice to defendants of the claims not only of the named plaintiffs, but also of potential absent class members who could advance those same claims. It would contravene

article 9 to hold that, if class action status is denied or the action otherwise terminated, putative class members are treated as if no action were ever brought. Such a rule would promote putative class members to initiate parallel individual claims in New York and other jurisdictions nearing expiration of the statute of limitations in order to protect against the risk of a subsequent denial of class certification or other non-merits termination—the very result article 9 was created to avoid. For that category of putative class members, the representative role of named plaintiffs would be illusory until class certification was granted. Thus, in recognizing cross-jurisdictional tolling under New York law, and answering the first certified question in the affirmative, we give effect to the legislative policy embodied in article 9; indeed, as noted, a contrary holding would undermine the detailed class action statutory scheme crafted by the legislature.

In light of this framework, we reject Occidental's argument that CPLR 201 prevents us from recognizing cross-jurisdictional tolling. CPLR 201 provides that "[a]n action . . . must be commenced within the time specified in this article unless a different time is prescribed by law or a shorter time is prescribed by written agreement. No court shall extend the time limited by law for the commencement of an action." To be sure, we have long recognized that "the various tolling provisions to the Statutes of Limitation are largely, if not exclusively, the product of legislative design" (*McCarthy v Volkswagen of Am.*, 55 NY2d 543, 547 [1982]). "As a rule . . . time limitations created by statute are not tolled in the absence of statutory authority" because "[c]ourts may only construe provisions made by the Legislature creating exceptions or interruptions to the running of the time limited by statute" and "may not themselves create such exceptions" (*Matter of King v Chmielewski*,

76 NY2d 182, 187 [1990] [internal quotation mark and citation omitted]). Our recognition of *American Pipe* tolling cross-jurisdictionally does not run afoul of the statute or its purposes because it is predicated on the express legislative design of CPLR article 9. CPLR 201 makes clear that courts do not have discretion to excuse late filings by plaintiffs who slept on their rights (*see Lubonty v U.S. Bank N.A.*, 34 NY3d 250, 261 n 8 [2019], citing Siegel & Connors, NY Prac § 33 at 51 [6th ed 2018]; *see generally Arnold v Mayal Realty Co.*, 299 NY 57, 59 [1949]; Siegel & Connors, NY Prac §§ 6 and 50 at 9, 82). Cross-jurisdictional tolling does not implicate this concern because injured individuals who rely on a representative class action have not slept on their rights and such tolling involves no exercise of judicial discretion—it turns entirely upon the existence of a class action.[8]

Moreover, our statute of limitations doctrines are intended to promote repose (*see ACE Sec. Corp., Home Equity Loan Trust, Series 2006-SL2 v DB Structured Prods., Inc.*, 25 NY3d 581, 593 [2015]; *Arnold*, 299 NY at 60), not undermine other significant statutory schemes. Our recognition of *American Pipe* cross-jurisdictional tolling harmonizes any tension between two statutory schemes adopted by the legislature, CPLR articles 2 and 9, and is not an exercise of judicial discretion (*see e.g. Matter of Tall Trees Constr. Corp v Zoning Bd. of Appeals of Town of Huntington*, 97 NY2d 86, 91 [2001]; *People v Dethloff*, 293 NY 309, 315 [1940]); *see generally Barchet v New York City Transit Authority*, 20

---

[8] A toll does not extend the statute of limitations indefinitely but merely suspends the running of the applicable statute of limitations for a finite and, in this instance, readily identifiable time period; keyed to judicial determinations recorded in the litigation record, the period of the toll is excluded from the calculation of the time in which the plaintiff can commence an action.

NY2d 1, 7 [1967]; *Matter of Humfreville*, 154 NY 115, 118 [1897]). We emphasize that tolling applies only if a defendant receives fair notice of all claims that might arise under New York law.[9] In addition, we reiterate that the putative class action, itself, must be timely and comport with CPLR 202. Finally, because the same principles that support recognition of cross-jurisdictional tolling necessarily include those supporting intra-jurisdictional tolling, we take this opportunity to recognize *American Pipe* tolling intra-jurisdictionally—confirming nearly forty years of Appellate Division case law acknowledging the same.[10]

---

[9] Whether cross-jurisdictional tolling is available with respect to putative class actions commenced in courts other than United States federal or state courts is not before us, and our decision should not be read to endorse any such proposition.

[10] *See Yollin v Holland Am. Cruises*, 97 AD2d 720, 720 (1st Dept 1983); *see also Badzio v Americare Certified Special Serv., Inc.*, 177 AD3d 838, 840-841 (2d Dept 2019) (observing that "New York courts have adopted [*American Pipe* tolling]"); *Desrosiers v Perry Ellis Menswear, LLC*, 139 AD3d 473, 473-474 (1st Dept 2016) (same), *affd on diff grounds* 30 NY3d 488 (2017); *Osarczuk v Associated Univs., Inc.*, 130 AD3d 592, 595 (2d Dept 2015) (same), *lv dismissed* 26 NY3d 1126 [2016]; *Altman v Fortune Brands*, 268 AD2d 231, 231 (1st Dept 2000) (determining that the plaintiff's *American Pipe* tolling argument was not preserved); *Paru v Mutual of Am. Life Ins. Co.*, 52 AD3d 346, 348 (1st Dept 2008) (stating that had the court reached the defendant's statute of limitations argument, it would have found that the plaintiff's claim was timely based on *American Pipe* tolling); *Singer v Eli Lilly & Co.*, 153 AD2d 210, 220-221 (1st Dept 1990) (determining that *American Pipe* tolling was not applicable to the toxic tort revival statute); *Hoerger v Board of Educ. of Great Neck Union Free School Dist.*, 98 AD2d 274, 281 (2d Dept 1983) (noting that *American Pipe* tolling was not available because the original plaintiff had not brought his case as a class action); *Douglas v Arthur Andersen & Co.*, 70 AD2d 542, 542 (1st Dept 1979) (assuming without deciding the adoption of *American Pipe* tolling, plaintiff's claim was untimely with or without the benefit of tolling), *lv denied* 47 NY2d 710 [1979]; *see also Adams v Bigsbee Enters., Inc.*, 53 Misc 3d 1210(A), *3 (Sup Ct NY County 2015) (noting that "a rule requiring [plaintiffs] to commence duplicative litigation simply to preserve the statute of limitations would frustrate the objectives of efficiency and economy underlying CPLR article 9").

IV.

In light of our conclusion that *American Pipe* tolling is consistent with New York law, we must answer the Second Circuit's second question, regarding when such tolling ceases. The parties are in agreement that tolling terminates when it is no longer objectively reasonable for absent class members to rely upon the putative class action to vindicate their rights, as the Supreme Court has held (*see China Agritech*, 138 S Ct 1800, 1808 [2018]; *see e.g. Giovanniello v ALM Media, LLC*, 726 F 3d 106, 117 [2d Cir 2013]; *Bridges v Dept of Maryland State Police*, 441 F 3d 197, 210-211 [4th Cir 2006]; *Betances v Fischer*, 403 F Supp 3d 212, 225 [SD NY 2019]).

While it generally will be clear when tolling ends under the objectively reasonable standard, the Second Circuit specifically requests guidance regarding whether a "*non-merits* dismissal of class certification" (933 F3d at 202 [emphasis added]) can end an absent class members' objectively reasonable reliance and, therefore, the tolling of the statute of limitations. Because we conclude that a non-merits dismissal or denial of class certification can end tolling, we answer the first part of the second question—"Can a non-merits dismissal of class certification terminate class action tolling?"—in the affirmative.

In answering the second part of that question—specifically, "did the Orders at issue here do so?"—we note that courts applying the law of other states already have grappled with how to apply the objectively reasonable reliance standard to the DBCP-related Texas litigation in this case, reaching contrary results.[11] In light of this controversy, the Second

---

[11] In *Marquinez v Dow Chem. Corp.*, the Supreme Court of Delaware reasoned "that a clear and unambiguous rule avoids uncertainty over the starting and ending dates for statutes of

Circuit is requesting our guidance concerning how to apply New York's tolling rule because, even when courts have purported to apply a uniform standard to the same litigation history, they have reached differing results.

Because recognition of cross-jurisdictional tolling implicates our statutes of limitations, a bright-line rule is necessary to provide clarity to all parties in understanding their rights and obligations and, in fairness—as with the policies underlying the application of statutes of limitations, generally—to balance the interests of both plaintiffs and defendants. Therefore, we hold that tolling ends—as a matter of law—when there is a clear dismissal of a putative class action, including a dismissal for forum non conveniens, or

---

limitation in cross-jurisdictional class action tolling cases" (183 A3d 704, 711 [Del 2018]). Therefore, the *Marquinez* court adopted the rule that "cross-jurisdictional class action tolling ends only when a sister trial court has clearly, unambiguously, and finally denied class action status" (*id.*)—here, in the 2010 Texas state court order denying class certification (*see id.*).

In contrast, the Eastern District of Louisiana, in applying that state's law, determined that the July 1995 order of the Southern District of Texas dismissing the Texas action on forum non conveniens grounds and denying class certification as moot, ended tolling (*see Chaverri v Dole Food Co., Inc.*, 896 F Supp 2d 556, 568-569 [ED La 2012], *affd* 546 Fed Appx 409 [5th Cir 2013]). That court noted that Louisiana "[c]ourts did not make any distinction based upon the type or manner of denial [of class certification], nor did they require that the denial be on the merits" (*id.* at 569).

The Supreme Court of Hawai'i also faced this issue arising from the same Texas litigation (*see Patrickson v Dole Food Co.*, Inc., 137 Haw 217 [2015]). The *Patrickson* court determined that, when the Texas federal court issued its October 1995 final judgment, "it could be said with certainty that [the issue of] class certification was denied" (*id.* at 229). In order to forestall confusion, the *Patrickson* court endorsed the rule that "the pendency of a class action in another jurisdiction operates to toll [the] applicable statute(s) of limitations until the court in our sister jurisdiction issues an order expressly denying a motion for class certification (or expressly denying the last such motion, if there is more than one motion)" (*id.*).

denial of class certification for any reason.  Under those circumstances, future plaintiffs are on notice that they must take steps to protect their rights because the litigation no longer compels the court to address class certification or the named plaintiffs to advance absent class members' interests.  At that point, it is no longer objectively reasonable for absent class members to rely upon the existence of a putative class action to vindicate their rights, and tolling is extinguished (*see* Effect of Class Action Filing on Limitations Period Governing Individual Claims, 1 McLaughlin on Class Actions, § 3:15 [16th ed.]).  Thus, in this case, the 1995 Texas orders that dismissed that action on forum non conveniens grounds ended tolling, as a matter of law.[12]

* * *

In sum, New York recognizes *American Pipe* tolling for absent class members of putative class actions filed in other state and federal courts.  Further, a "non-merits dismissal of class certification"—as occurred here in 1995—extinguishes tolling because, under New York law, tolling ceases when there is a clear dismissal of the action, including a dismissal for forum non conveniens, or denial of class certification for any reason.

Accordingly, following certification of questions by the United States Court of Appeals for the Second Circuit and acceptance of the questions by this Court pursuant to

---

[12] As noted above, the absent class members to the lawsuit filed in Texas were not enjoined from bringing individual actions after the Texas District Court's final judgment, evidenced by the District Court's later clarification that it had enjoined only the named plaintiffs and intervenors in the consolidated actions before it from commencing a DBCP-related lawsuit. Thus, as the dissent acknowledges, the hypothetical issue of state courts' authority to undermine the scope of federal orders "is not presented here" (dissenting op 11 n 5) (*cf. Patrickson v Dole Food Co., Inc.*, 137 Haw at 229; *Chaverri*, 896 F Supp 2d at 568-569).

section 500.27 of this Court's Rules of Practice, and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, the certified questions should be answered in the affirmative.

RIVERA, J. (dissenting in part):

The Court is unanimous that tolling of New York's statute of limitations ceases when a potential class member may no longer reasonably rely on a putative class action in a foreign jurisdiction to address the member's interests. However, I cannot subscribe to the

majority's adoption of a bright-line rule that turns that standard on its head by failing to consider the unique circumstances of the underlying litigation leading to a non-merits dismissal. Instead, I would answer the second certified question with a qualified affirmative: Tolling should end only upon a dismissal that is unconditional, meaning that the court leaves potential plaintiffs without any expectation of an opportunity for future class certification.

I.

The class action mechanism provides a means by which a large number of individuals may pursue their interests through a single suit, furthering efficiency and economy of litigation (*China Agritech, Inc. v Resh*, 138 S Ct 1800, 1806 [2018]; *American Pipe & Const. Co. v Utah*, 414 US 538, 551–552 [1974]; *Desrosiers v Perry Ellis Menswear, LLC*, 30 NY3d 488, 494 [2017]). Class actions also permit plaintiffs, unable to seek redress for injurious conduct because of financial or other structural barriers unrelated to their claims' underlying merits, to nevertheless pursue a remedy in court with other similarly harmed plaintiffs.[1] Class actions also serve society's interests of ensuring a

---

[1] *See* Christine P. Bartholomew, *Redefining Prey and Predator in Class Actions*, 80 Brook L Rev 743, 774-782 (2015) (explaining how putative class members are disadvantaged "financially, informationally, and because of judicial favoritism" relative to tortious corporations); Owen M. Fiss, *The Political Theory of the Class Action*, 53 Wash & Lee L Rev 21, 24 (1996) (noting that plaintiffs often cannot justify the expense of an individual suit given the nominal judgements litigation would yield); Governor Hugh L Carey's Approval Mem at 1, Bill Jacket, L 1975, ch 207, 1975 NY Legis Ann at 426 (explaining that a class action mechanism, in many cases, unless injured individuals are "willing and able to press [their] claim[s] as a matter of principle despite financial loss, there is no economic deterrent to poor workmanship, deceptive or unconscionable trade practices and

remedy for injured parties by incentivizing defendants to avoid harm and internalize the

costs of their actions, all the while providing the added benefit of reducing litigation

expenses through the class action procedure.

Today, we expressly adopt the rule announced by the United States Supreme Court

in *American Pipe* that, "commencement of a class action suspends the applicable statute of

limitations as to all asserted members of the class who would have been parties had the suit

been permitted to continue as a class action" (414 US at 554). We further clarify that the

rule applies to intra- and cross-jurisdictional filings alike (majority op at 15). As we

recognize, the same policies and legal principles that justify one apply equally to the other,

leaving no sound basis for distinguishing between the two (*id.*).

---

illegal conduct"); State Consumer Protect Bd's May 29, 1975 Mem in Support at 2, Bill Jacket,  L 1975 ch 207 ("The twin facts that the class suit can benefit persons with little knowledge of the law and that it renders economical the litigation of modest claims make its availability a strong deterrent to unlawful activity"); Assemblyman Stanley Fink Mem in support at 1, L 1975 ch 207, reprinted in 1975 NY Legis Ann at 10 (noting that class actions fill the "need[] for an effective, flexible and balanced group remedy in vital areas of social concern, such as claims arising from exposure of numerous persons[] to environmental offenses, violation of consumer interests, invasion of civil rights, execution of adhesion contracts, and many other collective activities reaching virtually every phase of human life").

II.

Central to the Supreme Court's and our analysis is judicial recognition of a potential member's reliance on the class action mechanism to protect their interests. Regardless of the jurisdiction where the action is filed, tolling the statute of limitations for all potential class members discourages them from filing individual suits "in the event that a class [is] later found unsuitable" (*American Pipe*, 414 US at 553). A contrary rule would result in a "needless multiplicity of actions," which the class action is designed to avoid (*Crown, Cork & Seal Co. v. Parker*, 462 US 345, 350 [1983]).

As the majority recognizes, tolling rules must "balance the interests of <u>both</u> plaintiffs and defendants" (majority op 17). A class action "notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment" (*American Pipe*, 414 US at 554-555). Accordingly, defendants are not prejudiced by tolling of the limitations period because the intended purposes of a statute of limitations, "to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights, . . . are met when a class action is commenced" (*Crown, Cork & Seal Co.*, 462 US at 352 [internal citations omitted]). The notice that class actions provide defendants does not diminish or change depending on the jurisdiction in which the class action is filed (*Vaccariello v Smith & Nephew Richards, Inc.*, 94 Ohio St 3d 380, 383 [Ohio 2002]; *Dow Chem. Corp. v Blanco*, 67 A3d 392, 396 [Del 2013]).

III.

The analytic and practical reasons for adopting class action tolling inform our response to the second certified question, which concerns when tolling should end. On that score, I agree with the majority that the potential members' reasonable reliance on the class action controls our analysis, but that does not lead me to adopt the majority's bright-line rule. A standard of reasonableness inherently requires flexibility and discretionary analysis,[2] which in the context of a class action requires consideration of the issues unique to this procedural mechanism.

A class action allows a named plaintiff to commence a suit as a representative of the known and unknown members of a putative class. This procedural mechanism would be of limited benefit, "unless the statute of limitations was tolled by the filing of the class action," because otherwise "class members would not be able to rely on the existence of the suit to protect their rights" (*Crown, Cork & Seal Co.*, 462 US at 350).

However, there are different points in class-action litigation where that reliance understandably fades. On that spectrum, a court's denial of class certification on the merits is the clearest indicator that a potential class member should no longer hold out hope that

---

[2] "Reasonable" means "fair, proper, or moderate under the circumstances" (Black's Law Dictionary 1518 [Bryan A. Garner et al. eds., 11th ed. 2019]). A reasonable person "acts sensibly, does things without delay, and takes proper but not excessive precautions" (*id.* at 1519).

this procedural mechanism will protect their interests. Upon denial of certification, tolling ceases and the member must then decide how to proceed (*id*. at 354).

At the other end of the spectrum, whether tolling ends and the statute of limitations continues to run after a non-merits denial of class certification or a dismissal of the action depends on how that order would affect the reasonable expectations of potential class members. Whether the non-merits-based denial or dismissal anticipates that a potential member will have a future opportunity to return and certify the class bears strongly on the reasonableness of the potential member's continued reliance on the class.

In my view, the rule that best protects the rights of potential class members, who reasonably "rely on the existence of the [putative class action] suit to protect their rights" (*Giovanniello v. ALM Media, LLC*, 726 F3d 106, 117 [2d Cir 2013], quoting *Crown, Cork & Seal Co.*, 462 US at 350), and thus avoids a "multiplicity of filings by potential class members seeking to preserve their rights" (*id.*, quoting *Crown, Cork & Seal Co.*, 462 US at 351 [internal quotation marks and brackets omitted]), is a rule that ceases tolling upon an unconditional, non-merits denial of class certification or dismissal of the putative class action. The absence of conditions places the non-merits denial or dismissal on equal footing with a merits-based denial of class certification, which undisputedly renders unreasonable a potential class member's reliance on the class action to protect their interests.

Thus, tolling should continue when a denial or dismissal is conditional and allows for return and possible class certification upon satisfaction of the condition. It is objectively

reasonable to abide by a judicial directive as to whether and how the class action may proceed in the future. And allowing a potential class member the opportunity to file individually after that person relied on a court's order conforms to the purposes of class actions and the intent of tolling.

For example, a court's non-merits dismissal of a class action because of an insufficient pleading that permits refiling and amendment of the class-action complaint within a set timeframe, does not render a potential class member's continued reliance on the class action unreasonable. The court has allowed the representative plaintiff to refile the complaint. If they properly amend, the suit continues as a putative class action in a timely manner. To state the obvious, it would undermine judicial economy and efficiency if potential class members were forced to rush to other jurisdictions to file placeholder suits in this context (*Crown, Cork & Seal Co.*, 462 US at 351).

Similarly, the dismissal order here, which included a return-jurisdiction clause, did not terminate cross-jurisdictional tolling. Certainly the District Court did not understand its dismissal as a final rejection of class certification. The court acknowledged that it "conditionally granted defendants' motion to dismiss under the doctrine of forum non conveniens" (*Rodriguez Delgado v Shell Oil Co.*, 322 F Supp 2d 798, 801 [SD Tex 2004]), and that the forum-non-conveniens "dismissal entered in this case was 'final' only for purposes of appealing the court's [forum-non-conveniens] decision" (*id.* at 816). The district court order made clear that if another forum was not available in their home country, the plaintiffs could return to federal court, picking up exactly where they had left off. When

the plaintiffs then returned to Texas, the District Court noted that the return-jurisdiction clause was "an express statement of the court's intent to retain jurisdiction," and that the reinstated suit was "a direct continuation of the prior proceedings[.]" The plaintiffs, and thus the potential class members, had every reason to rely on the District Court's representations.

In contrast, if the plaintiffs were able to pursue their claims in the foreign courts, then it would have been clear that those plaintiffs would not and could not continue the class action in Texas. At that point, reliance on the class would have become unreasonable.[3]

The majority notes that its bright-line rule provides certainty (majority op at 17). No doubt it does. But recognizing the general effect of a bright-line rule does not resolve where to draw the line. Though I do not believe that a bright-line rule is appropriate here, the majority fails to address why its rule is preferable to a rule that only a denial of class certification on the *merits* ends tolling, even though that rule would be equally obvious and clear, imposes no prejudice on plaintiffs or defendants, and better promotes efficiency and judicial economy.[4]

---

[3] Of course, in order to reinstate the class action, a representative plaintiff must first pursue an action in the appropriate foreign court. Absent that course, the potential member has no basis to rely on what is essentially their representative member's abandonment of the class action. This further illustrates that the reasonable reliance standard is flexible and subject to the nuances of a conditional dismissal or denial order.

[4] The majority elevates certainty over fairness and ignores the potential for unjust outcomes under its rule. For example, restarting New York's statute of limitations in 1995, as the majority does, would have placed the named plaintiffs and intervenors in the Texas litigation in an untenable position had they known about the rule. The Texas District Court

As the majority recognizes, the Supreme Court of Delaware, in applying cross-jurisdictional tolling under an objectively reasonable reliance standard to the same facts as those before this Court, concluded "that a clear and unambiguous rule avoids uncertainty over the starting and ending dates for statutes of limitation in cross-jurisdictional class action tolling cases" (*Marquinez v Dow Chem. Co.*, 183 A3d 704, 711 [Del 2018]). It drew its bright line in a different place from the majority: "[C]ross-jurisdictional class action tolling ends only when a sister trial court has clearly, unambiguously, and finally denied class action status" (*id.*; *see also Korwek v Hunt*, 827 F2d 874, 879 [2d Cir 1987] [noting that "the tolling rule established by *American Pipe*, and expanded upon by *Crown, Cork*, was not intended to be applied to suspend the running of statutes of limitations for class action suits filed after *a definitive determination of class certification*"] [emphasis added]). Similarly, in *Badzio v Americare Certified Special Servs., Inc.* (177 AD3d 838, 842 [2d Dept 2019]), the Second Department concluded that *American Pipe* tolling only ended

---

instructed those parties to seek relief in their respective home countries with the understanding that they could return if the foreign court dismissed for lack of jurisdiction. The District Court further *enjoined* them from filing new suits in the United States. The parties were presented with a Hobson's choice of (a) complying with the federal injunction or (b) filing in New York to protect their claims from dismissal, thereby violating the federal order and risk being held in contempt. If they chose the former, they would have been forced to watch the limitations period run, without the opportunity to file in New York if their claims were resolved unfavorably abroad. How does this further the purposes of Article 9 (*see supra* note 1 [citing Article 9's legislative history])? Or how does it avoid a constitutional conflict under the Supremacy Clause (*see infra* note 5)? And yet if New York is to have a bright-line rule, the fairer approach—summarily rejected by the majority— would end tolling upon a merits dismissal. Thus, accomplishing the majority's goal of certainty without the potential injustice noted above or federal-state discord.

where the trial court "made a definitive determination of the inappropriateness of class certification."

Unlike Delaware's rule, and that adopted by the Second Department, the majority's non-merits, bright-line rule has the disadvantage of encouraging class members to act prematurely by filing individual suits that may prove unnecessary. The facts of this case exhibit that potential waste of resources. The District Court did not address the merits of the class-certification application that the plaintiffs had filed in state court when it dismissed the case in 1995; the District Court retained jurisdiction so that the plaintiffs could return to Texas if their suits were jurisdictionally dismissed abroad; and the District Court told plaintiffs that, if they returned to Texas, the suit would pick up where it had left off, which it did. The plaintiffs had every reason to believe that class relief was available until class certification was clearly and unambiguously denied on the merits in 2010.

To clarify this point, assume a hypothetical case in which all facts are the same, except that the Texas state court granted class certification in 2010. Under the majority's rule, plaintiffs here would have been forced to file superfluous individual suits in New York by 1998 or risk forfeiting their claims. Diligent plaintiffs would have filed a multiplicity of actions that would have worked their way through New York's courts for 12 years when those actions could have ultimately been resolved in Texas. That is, the majority's rule risks generating exactly the sort of congestive placeholder suits that *American Pipe* tolling—which we now adopt—was designed to avoid (*see American Pipe*, 414 US at 550 [noting that tolling promoted the goals of class action representation, which

is "to avoid, rather than encourage, unnecessary filing of repetitious papers and motions"]).[5]

IV.

For the reasons above, I would answer the second certified question in the affirmative in those cases when the non-merits denial of class certification or dismissal of the putative class action is unconditional and unaccompanied by judicial directives that permit for continued pursuit of the class action. Under those circumstances, it is no longer objectively reasonable for the potential class members to rely on the class to protect their interests.

Following certification of questions by the United States Court of Appeals for the Second Circuit and acceptance of the questions by this Court pursuant to section 500.27 of this Court's Rules of Practice, and after hearing argument by counsel for the parties and consideration of the briefs and record submitted, certified questions answered in the affirmative. Opinion by Judge Stein. Chief Judge DiFiore and Judges Garcia and Feinman concur. Judge Rivera dissents in part in an opinion in which Judges Fahey and Wilson concur.

Decided October 20, 2020

---

[5] The majority's failure to recognize the import of the federal return-jurisdiction order that also enjoined additional filings in the United States raises serious questions about the legality of the majority's rule under the United States Constitution. State courts have no authority to undermine the scope of federal orders (US Const art VI [The laws of the United States "shall be the supreme law of the land; and the judges in every state shall be bound thereby"]). However, the issue is not presented here. During litigation by certain plaintiffs to reinstate the class action pursuant to the return-jurisdiction clause, the United States Supreme Court rejected the jurisdictional predicate relied upon by defendant to remove the class action to federal court (*see generally Dole Food Co. v Patrickson*, 538 US 468 [2003]).